### TEXAS EMPLOYERS INS. ASS'N v. WATKINS.

### No. 13150.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 17, 1936.

Rehearing Denied Feb. 14, 1936.

T. R. Boone and Kearby Peery, both of Wichita Falls, for plaintiff in error.

E. W. Napier, of Wichita Falls, for defendant in error.

DUNKLIN, Chief Justice.

F. J. Watkins sustained a personal injury in the course of his employment by A. T. Wolfe and L. V. Hull. Wolfe was a subscriber under the Workmen's Compensation Act, and carried a policy of insurance with the Texas Employers Insurance Association. Watkins filed his claim for compensation for injuries with the Industrial Accident Board, who entered an order approving a compromise agreement between the insurance company and Watkins for settlement of his claim for $100, which was paid. After receipt of the money, Watkins applied to the board for allowance of additional compensation on allegations that he had been induced to execute the settlement agreement by misrepresentations. of Dr. J. A. Heyman and J. C. Ward, agents of the insurance company, and in the alternative on the ground of mutual mistake of parties to the agreement; with further allegations that the $100 received by him was far less than the amount justly due him. The board refused that application, and Watkins appealed to the district court, where he recovered judgment canceling the settlement agreement and decreeing to him compensation in the sum of $3,623.24 as a lump sum settlement—all in accordance with findings of the jury on those issues. The insurance company has appealed.

According to the decision of the Commission of Appeals. in Commercial Casualty Insurance Co. v. Hilton, 87 S. W.(2d) 1081, approved by the Supreme Court, rendered December 4, 1935, the approval by the Accident Board of the settlement agreement and award of compensation based thereon was not an award of compensation within the meaning of the. act, and its refusal to set aside its order approving the settlement was not an order denying compensation, and therefore did not furnish a basis for appeal to the district court, and for that reason the district court did not acquire jurisdiction to determine the merits of plaintiff's claim for compensation. According to that decision, the board of arbitration was without jurisdiction to set aside the settlement agreement, but the district court did acquire jurisdiction to determine that issue.

It follows, therefore, that the award of compensation by the district court must be set aside for lack of jurisdiction to make the award, leaving the assignments of error to that portion of the judgment canceling the compromise settlement between the parties the only ones to be determined.

The compromise settlement agreement was in writing and was signed by J. C. Ward, general agent for the insurance association, and plaintiff, F. J. Watkins, claimant, and embodies recitals that plaintiff had sustained a personal injury in the course of his employment by A. T. Wolfe,

who carried a policy of insurance under the Texas Employers' Liability Act (Vernon's Ann.Civ.St. art. 8306 et seq.); that the nature, extent, and duration of his injury is uncertain and indefinite or incapable of being satisfactorily established; that plaintiff was contending that he is now, and has been, totally disabled by reason of his injury, and will be so for an indefinite period in the future, while the insurance association was denying that such was the extent of his injury; and in consideration of those facts the association had agreed to pay, and the plaintiff had agreed to accept, $100 as a compromise settlement in full of his claim for compensation for his injury; and that the settlement so made was subject to approval by the Industrial Accident Board. Attached to the agreement was plaintiff's affidavit describing the accident in which he was injured and the manner of his injury, and embodying recitals substantially the same as in the contract for settlement, and stating that he was fully informed of its contents, and that in entering into that agreement he was relying solely upon his own knowledge of his condition and not upon the opinion or statements of any doctor or other agent of the association.

Those instruments were prepared for execution by the association. Plaintiff testified that he did not read them before he signed them because he did not have his glasses; that he requested Mr. Ward to read them to him, but Ward declined to do so, saying that would be contrary to instructions from his company, but that Ward did not object to his reading them for himself, and he did look them over in a casual way, and then signed them and received from the association the $100 agreed on.

In this connection it is to be noted that no issue was submitted to the jury requiring findings as to whether or not plaintiff's execution of those instruments was induced by any misrepresentation of their contents or any other character of fraud on the part of Ward, as the agent of the association.

In answer to special issues, the jury found (a) that Dr. J. A. Heyman stated to plaintiff that in his opinion the plaintiff's spine was not injured; (b) at that time plaintiff did have a serious injury to his spine; (c) Dr. Heyman did not know the condition of plaintiff's spine; (d) plaintiff believed the statement so made to him by Dr. Heyman, and would not have made the settlement but for such statement.

The facts so found by the jury were alleged in plaintiff's petition as a ground for the cancellation of the agreement for settlement of his claim.

As appears from testimony introduced by plaintiff, he sustained injury to his spine in the course of his employment as alleged in his petition, and sustained damages therefrom in excess of the $100 which he received in his settlement with the insurance company. Plaintiff testified that he was examined by Dr. Heyman, agent for the insurance company, at the request of J. C. Ward, claim agent for the company, but prior thereto he had consulted Dr. Parrish, a physician of his own selection, and further testified as follows:

"Dr. Parrish had been over there that morning, and Dr. Parrish told me that he had done as much for me as he could, and I was getting along pretty well, and he was going to turn in his bill, and if anything came up further, to call on him and let him know, but he had done all he could unless we come to the hospital and have an X-ray to see the extent of my injuries, and that if he was in my place, he would wait a while and I was getting along fairly well, it looked like and probably I would not have to have an X-ray examination and not have that expense. Mr. Ward came and I told him what Dr. Parrish said, he came right after noon and proposed to bring me up here to have an examination made up here."

In answer to the question, "What did Dr. Heyman do?" plaintiff testified: "He gave me an examination, he stripped me stark naked, and went up and down my spine and neck and examined the rupture and I reckon it took him about thirty or forty minutes, and he told me he was through with me, and that he thought I ought to be able to go back to work in a couple of weeks or a month at the outside."

He further testified that Dr. Heyman did not take an X-ray picture, but told plaintiff he would be able to go to work in a couple of weeks or a month at the outside; that plaintiff had suffered a strain or sprain of his back, but he did not think there was any spinal injury; and that was his reason for not taking an X-ray picture.

■ Even though it be said that the jury was authorized to find that plaintiff relied solely on the statements by Dr. Heyman with respect to his injuries to the exclusion of the advice theretofore given him by Dr. Parrish, whom he himself first selected, yet the foregoing testimony shows beyond doubt that Dr. Heyman's statements were expressions of opinion only, and that he did not in fact know the condition of plaintiff's spine, all as found by the jury. And therefore those findings could not furnish a proper basis for cancellation of the settlement on the ground of fraud. Commercial Casualty Insurance Co. v. Hilton, supra; Quebe v. Gulf, C. & S. F. Ry. Co., 98 Tex. 6, 81 S.W. 20, 21, 66 L.R.A. 734, 4 Ann.Cas. 545; Goodwin v. Texas Employers' Insurance Ass'n (Tex.Civ.App.) 73 S.W.(2d) 660, 661; Lloyd v. Junkin (Tex. Civ.App.) 75 S.W.(2d) 712, 714, and authorities there cited, including Barrett v. Featherstone, 89 Tex. 567, 35 S.W. 11, 36 S.W. 245; Wortman v. Young (Tex.Civ. App.) 221 S.W. 660; Laybourne v. Bray & Shifflett (Tex.Civ.App.) 190 S.W. 1159; Landrum v. Thomas (Tex.Civ.App.) 149 S. W. 813; Horton v. Smith (Tex.Civ.App.) 145 S.W. 1088; El Paso & Southwestern Co. v. Kramer (Tex.Civ.App.) 141 S.W. 122 (writ refused). See, also, notes of decisions on the subject of setting aside compromise settlement for personal injuries on the ground of fraud, 48 A.L.R. beginning on page 1486. Nor can plaintiff complain that he signed those instruments in ignorance of their contents when he was offered opportunity to read them. 10 Tex. Jur. § 57, p. 98.

Following is a further issue, with the finding by the jury thereon:

"Special Issue No. 23: Do you find from a preponderance of the evidence that the plaintiff and the defendant believed at the time of the settlement that the injuries, if any, to the plaintiff's back consisted only of muscular strains, and that the same was temporary? Answer 'yes' or 'no.'

"Answer: Yes."

Appellee insists that that finding sustains his allegation that his execution of the agreement was the result of mutual mistake and that the decree of cancellation should be sustained by reason thereof independently of the issue of fraud.

■ That contention is without merit. In the first place, there was no finding of the jury that plaintiff was induced to execute the agreement through mutual mistake, nor did plaintiff request the submission of such an issue; therefore that ground for cancellation was waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S. W.(2d) 1084; Guitar Trust Estate v. Keith (Tex.Com.App.) 45 S.W.(2d) 190. In the second place, the finding of the jury that plaintiff was induced to execute the agreement in reliance upon the opinion of Dr. Heyman is of itself adverse to the contention that he was induced to execute it because of a mutual mistake of the parties. Furthermore, the testimony showing conclusively that at the time of settlement the extent of plaintiff's injury was uncertain and that the compensation therefor was agreed on with that uncertainty in the minds of the parties, that finding could not be made the basis for rescission on the ground of mutual mistake. Otherwise there could never be a binding settlement for an injury of uncertain final outcome, even though made without fraud on the part of the adverse party. In support of this conclusion we cite Inter-Ocean Casualty Co. v. Johnston, 123 Tex. 592, 72 S. W.(2d) 583, opinion by Justice Critz of the Commission of Appeals; Goodwin v. Texas Employers' Insurance Ass'n (Tex. Civ.App.) 73 S.W.(2d) 660, 663, and other authorities cited; Estes v. Hartford Accident & Indemnity Co. (Tex.Civ.App.) 46 S.W.(2d) 413 (writ of error refused); Houston & T. C. Ry. Co. v. McCarty, 94 Tex. 298, 60 S.W. 429, 53 L.R.A. 507, 86 Am.St.Rep. 854.

Also see notes of decisions in cases involving cancellation of compromise settlements for personal injuries on the ground of mistake in 48 A.L.R. beginning on page 1464.

Accordingly, the judgment of the trial court vacating the compromise settlement agreement is reversed, and judgment is here rendered denying plaintiff that relief. And the judgment of the trial court awarding plaintiff compensation for the injury sustained by him is reversed and set aside for lack of jurisdiction in the trial court to determine that issue.

Reversed and rendered.