## TEXAS EMPLOYERS INS. ASS'N v. WATKINS et al.

### No. 13988.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 24, 1939.

Rehearing Denied Jan. 12, 1940.

T. R. Boone, E. T. Duff, and Kearby Peery, all of Wichita Falls, for appellant.

Napier & Napier, of Wichita Falls, for appellees.

SPEER, Justice.

This is a Workmen's Compensation case, and the rights of the parties are controlled by the provisions of Article 8306 et seq., R.C.S., and Vernon's Texas Civil Statutes.

The suit was instituted by Mrs. Nellie Watkins and her children, as the surviving dependents of F. J. Watkins, deceased against Texas Employers Insurance Association, as compensation insurance carrier for the employers, A. T. Wolf and L. V. Hull, and that if it should be determined that deceased was an employee of Wolf only, then that the policy was intended by all parties to cover the employee, Watkins.

It appears that F. J. Watkins was the deceased husband of Mrs. Nellie Watkins, and the father of the other plaintiffs; F. J. Watkins had been employed as a pumper on an oil lease owned and operated by the named employers for about six years prior to May, 1933, when he received an accidental injury to his head, neck and back, while in the course of his employment. Allegations were that shortly after receiving the injury, and as a direct result thereof, Watkins developed tuberculosis, from which he suffered continuously until he died, on November 16, 1937; his average weekly wage is alleged to have been $12. Plaintiffs sought recovery for 360 weeks' compensation. Under the necessary allegations, they prayed for a lump sum settlement.

The insurance carrier, to which we shall refer as defendant, answered by general denial and by special pleas, among which was one of res judicata, the nature of which plea and the facts developed thereunder will have our attention later in this discussion.

The cause was tried to a jury on special issues. The court explained in his charge the meanings of "injury" and "personal injuries", "injury sustained in the course of employment", "accident" and "accidental", "employee" and "producing cause", and complaint is made only of the latter, which we quote: "Instruction E. You are instructed that by the term 'producing cause', as used in this charge, is meant an exciting or contributing cause, which together with another cause or causes, produces a death, and but for which the death would not have resulted."

Under these instructions the verdict of the jury, as reflected by answers to the special issues, was: (1) Watkins sustained an injury on May 15, 1933; (2) such injury was accidental; (3) it was sustained in the course of his employment; (4) the injury so sustained was the producing cause of Watkins' death; (5) that manifest hardship and injustice would result to plaintiffs unless compensation was paid in a lump sum; (6) deceased's death was not solely the result of disease; (7) that his death was not solely the result of tuberculosis, and (8) it was the intention of the association that the insurance carried by it would inure to the benefit of F. J. Watkins.

On the verdict judgment was entered in favor of the surviving wife, in a lump sum, for $1,126.51 and in favor of the minor children for $181.69, and an additional amount of $3.60 per week for 311 weeks. The aggregate amount for which judgment was rendered was based on a $12 average weekly wage rate for 360 weeks, beginning with the date of the death of F. J. Watkins. Certain of the plaintiffs were found to be more than twenty-one years of age, not dependent, and were denied recovery. Provisions were made in the judgment for the statutory attorney's fees.

Defendant's motion for new trial being overruled, it has perfected this appeal under adequate assignments of error.

The first proposition is to the effect that since such accidental injuries as were received by deceased occurred on May 15, 1933, and he having died on November 16, 1937, from tuberculosis, there was no tes-

timony of probative force to support a jury finding that the accidental injury was the procuring cause of his death.

We think there is enough evidence in the record, which, if believed by the jury, would constitute more than a suspicion or surmise that the accident contributed to or aggravated a prior tubercular condition, or disease, with which the employee was suffering at the time of the accident.

Under Article 8309, R.C.S., subdivision five of Section 1, it is provided that, "The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." The foregoing definition was included in the court's charge.

Mrs. Watkins testified that her husband received the injury on about May 15, 1933; she saw him sitting at the power plant with his head on his arms and went to him and found him apparently suffering from an injury; she took him home and sent for the doctor; he was complaining of his back, neck and chest; he said he was suffering pain in these parts; he complained most of his back; when the doctor came he was examined in the presence of witness, and she saw bruises on his back and chest. Deceased spit up blood for a few days after he was injured, she did not remember exactly how many days; he remained in bed several weeks and lost weight and began running a temperature in the summer; the next spring he began to have spells with his lungs and coughed up considerable blood; he remained in bed and would get up for short times and lie down again; he had those spells with his lungs and spit up blood frequently after that first summer; he grew weaker all the time until he died, on November 16, 1937. On cross examination Mrs. Watkins said she had previously testified in a case wherein her husband was suing for compensation but had not mentioned the fact that her husband had spit up blood; she said she was not asked about it and that she did not testify about it.

Dr. Parnell testified that he examined Watkins in December, after he claimed to have been injured in May; made X-ray pictures of his spine and found that he had a dislocated vertebra and a left inguinal hernia; he was complaining of his chest; he made no picture of his chest, because the patient did not want it done until he could pay for it; a diagnosis was made by witness and it was found that Watkins had tuberculosis and witness so advised him at the time. Witness said he found tuberculosis in the chest and that Watkins died of pulmonary tuberculosis. Counsel for plaintiffs propounded a hypothetical question to the witness, embracing the things testified to by Mrs. Watkins, and asked if those were the symptoms of tuberculosis, and the doctor said, "Yes sir, that is a picture of tuberculosis". Based on the question and a description of the injury received the witness was asked to "Tell the jury what effect the injury (to Watkins) had on his death." Among other things, witness said, "Well, of course it lowered his vitality. He evidently had a tubercular infection in his chest or in his system somewhere and the lowering of a man's vitality, or the damage to a chest which would cause him to spit up blood would very likely cause a hemorrhage into some part of the lung which would further aggravate it." An injury to the chest which causes a man to spit up blood would indicate that he had a damage somewhere in the lungs or bronchi. It indicates a rupture of a blood vessel in the lungs or bronchi, and the bronchi go all through the lungs; Watkins evidently had some degree of tuberculosis years before that (when he received the injury), a little while before anyway, at least he had the germ in his body.

■ It is well settled by many decisions in this State that even though an employee is afflicted with disease prior to receiving a compensable injury which aggravates the pre-existing disease, resulting in death or incapacity, the employee will not be denied recovery. Millers' Indemnity Underwriters v. Schrieber, Tex.Civ.App., 240 S.W. 963, writ refused; Texas Emp. Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752, writ dismissed; Texas Emp. Ins. Ass'n v. Parr, Tex.Com.App., 30 S.W.2d 305; Texas Emp. Ins. Ass'n v. Ford, Tex.Civ.App., 93 S.W.2d 227, writ dismissed; Travelers Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354, writ dismissed; Traders & Gen. Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391.

■■ The testimony in the instant case was conflicting, and the controversial issues were for determination by the jury. In this case they were resolved against the contention of defendant, and it is not our prerogative to set that verdict aside, if there is any substantial testimony to support it. 3 Tex.Jur., page 1102, sect. 771; 41 Tex.Jur., page 1246, sect. 378; Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824;

Choate v. San Antonio & A. P. Ry. Co., 91 Tex. 406, 44 S.W. 69; Post v. State, 106 Tex. 500, 171 S.W. 707; Sproles Motor Freight Lines v. Juge, Tex.Civ.App., 123 S.W.2d 919, writ dismissed—correct judgment; Worth Finance Co. v. Hillard Motor Co., Tex.Civ.App., 131 S.W.2d 416; Texas Cotton Growers' Ass'n v. McGuffey, Tex. Civ.App., 131 S.W.2d 771, writ dismissed, and cases there cited. In the last cited case, the court used this language, 131 S.W. 2d at page 774: "It appears to be well settled that a verdict will not be disturbed because a jury may have erred, but that in order to justify this court in setting aside such a verdict, it is not sufficient that it does not appear clearly to be right; it must appear to be clearly wrong." Because of the nature of the testimony, the hopeless conflicts therein, the verdict rendered and the authorities cited, the assignment is overruled.

■ Another proposition by defendant challenges the definition of "producing cause", as given in Section "E" of the court's charge. Before it was read to the jury, objections were made to that part of the charge, but in the motion for new trial we find no ground there urged to that section; however, there are two grounds urged in identically the same language to "Section D" and to consider that one of them was intended to cover "E" above quoted, we do not think it open to the objections urged. The complaint made was that the charge on "producing cause" was too general under the facts of this case; that by its terms it did not exclude "occupational disease" nor affirmatively exclude the "lowered resistance" feature in the case. We see no element of occupational disease in the record nor is the verdict necessarily grounded upon the lowered resistance theory urged by defendant.

We are cited by defendant to the case of Texas Employers Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200, in support of its contention that the instruction should have excluded definitely the right of recovery by plaintiffs when the testimony disclosed only that Watkins died from tuberculosis, contracted after the injury, because of his lowered vitality resulting from the injury. In the Burnett case, the court drew the distinction between injuries which contribute to pre-existing diseases, producing death or disability, and those injuries which simply reduce one's vitality and ability to resist a new and independent disease that may be contracted thereafter. At page 202 of 105 S.W.2d, the court said: "It is not even contended in this case that the death was the result of the injury. The finding, which is shown by the undisputed proof, that the employee died 'as a direct result of typhoid fever, which was in no way produced or caused by the injury,' negatives the idea that the death was the result of the injury. It is only contended that the injury may have to some extent lowered the resistance of the employee, and in that way probably contributed to some extent to his death." In the instant case the doctors who testified referred to lowered vitality and resistance of disease when caused by injuries; yet, as above stated, there was sufficient testimony of probative value that the tubercular condition was in the body of Watkins before he received the injury, to distinguish the issue from the conditions considered by the court in the Burnett case, supra. We think that the charge sufficiently informed the jury that a producing cause must be one which, in conjunction with other cause or causes produces a death, which would not have occurred but for the injury. The assignment must be overruled.

Defendant, by its third proposition based on an assignment of error, challenges the first special issue. That issue reads: "Do you find from a preponderance of the evidence that the deceased, F. J. Watkins, sustained an injury on about the 15th day of May, 1933?" The answer was, "He did."

Objections and exceptions were timely made to that issue upon the grounds that it was too general and not supported by the pleadings or evidence. Further, because the issue does not confine the inquiry to the allegations nor evidence as to the nature and manner of receiving an injury, relied upon by plaintiffs.

■ The assignment is well taken. The inquiry was too general in its nature and gave the jury the opportunity to speculate upon any injuries sustained by deceased, whether they be those plead and proved or not. The issue should have been so framed as that an answer would determine whether or not Watkins was injured on the date inquired about, in the manner alleged in the petition. It is fundamentally true that a plaintiff must recover, if at all, upon the grounds relied upon in his pleadings. Security Mutual Casualty Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552; Casualty Underwriters v. Lemons, Tex.Civ.

App., 114 S.W.2d 333; Federal Underwriters Exchange v. Arnold, Tex.Civ.App., 127 S.W.2d 972, writ dismissed, correct judgment; McGrew v. St. Louis, S. F. & T. R. Co., 32 Tex.Civ.App., 265, 74 S.W. 816, writ dismissed; Texas Indemnity Ins. Co. v. Pemberton, Tex.Civ.App., 9 S.W.2d 65. In Traders & Gen. Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391, application for writ dismissed upon agreement of parties, the court submitted in separate special issues each of the injuries alleged to have been sustained, and complaint was made that in doing so the contentions of plaintiffs were unduly emphasized. This court held that there was no error in submitting the issues separately, and that to have submitted them all in one inquiry would have rendered the question open to a valid objection, if urged. When the instant case was tried, there were two supplemental petitions and one trial amendment before the court. The record discloses that another trial amendment was attempted to be filed and that it was refused by the court. With the record in this condition it is not improbable that there will be amendments in the pleadings and little aid can be rendered by this court at a new trial, by suggestions of how the alleged injuries should be submitted, further than what has been said.

Defendant's seventh proposition, based on its eighth assignment of error, reads: "Where an employee received an accidental injury in May, 1933, and thereafter lives approximately four years and seven months before he dies from tuberculosis, all compensation accruing from the date of the accident until his death belongs to the employee, and the beneficiaries suing under the death statute are only entitled to recover 360 weeks' compensation, less the number of weeks of disability insurance accruing to the deceased, and are not entitled to recover 360 weeks' compensation dating from the time of the death."

The foregoing proposition is urged under defendant's plea of res judicata, referred to by us in the early part of this discussion.

The rights of the parties to this suit are controlled exclusively by the provisions of our Workmen's Compensation Act. It is by virtue of the following provisions of the Act that plaintiffs had a right of recovery. Article 8306, Section 8, R.C.S., declares: "If death should result from the injury the association hereinafter created [insurance carrier in this case] shall pay the legal beneficiaries of the deceased employé a weekly payment equal to sixty per cent of his average weekly wages, but not more than $20.00 nor less than $7.00 per week, for a period of three hundred and sixty weeks from the date of the injury."

Section 8b of the same article provides: "In case death occurs as a result of the injury after a period of total or partial incapacity, for which compensation has been paid, the period of incapacity shall be deducted from the total period of compensation and the benefits paid thereunder from the maximum allowed for the death."

■ The record before us in this case, as well also the record in the case of Texas Employers Ins. Ass'n v. F. J. Watkins, Tex. Civ.App., 90 S.W.2d 622, of which we may take cognizance, disclose that after F. J. Watkins, now deceased, had received the accidental injuries in May, 1933, he filed with the Industrial Accident Board his claim for compensation, claiming total and permanent disability; that pending a hearing on that claim before the Board, Watkins and the association entered into a compromise settlement of his claim for compensation. By the terms of the compromise, Watkins was to receive $100 as payment in full for all compensation to which he was entitled. On June 9, 1933, the Board approved the compromise settlement, the money was paid to the employee by the association and a release of all liability was executed by Watkins. Thereafter, Watkins filed an application with the Board requesting that its order of approval of the compromise settlement be set aside for the reason that the purported settlement had been brought about by fraud upon the part of the association, and if not that, then by mutual mistake of the parties. The application was denied by the Board and Watkins appealed to the district court of Wichita County, Texas. Upon an amended pleading filed to the October, 1933, term of the district court, Watkins sought to set aside the order of the Board, in which it refused to set aside its former order approving the compromise settlement between him and the association. In addition to setting aside the order of the Board, Watkins sought in the same suit to recover compensation for total permanent disability. A jury trial resulted in a judgment giving him the relief sought. The association appealed from that judgment and this court reversed that judgment and

rendered the cause for the association. Texas Employers Ins. Ass'n v. Watkins, Tex.Civ.App., 90 S.W.2d 622. Application for writ of error was dismissed by the Supreme Court, for grounds stated, not important here, reported in same styled case, 130 Tex. 383, 110 S.W.2d 1153.

It will be seen from what we have said that Watkins, during his lifetime, collected (even though by means of what perhaps was an improvident compromise) all compensation to which he was entitled prior to his death on November 26, 1937. The period of time between the date of injury and the date of death was less than 360 weeks.

We think it was the intention of the Legislature when passing the Workmen's Compensation Act to provide that an injured employee covered by the Act could never recover compensation for more than 401 weeks at the rate fixed by the Act, applicable to the particular case then under consideration. Article 8306, Sect. 10, R.C.S.; Texas Employers Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900.

This brings us to the question of determining the maximum number of weeks' compensation the plaintiffs would be entitled to recover. Should it be for 360 weeks after the date of the death of the husband and father, or should it have been for 360 weeks from the date of the injury after deducting the total period of incapacity for which compensation had been paid (by the compromise settlement above mentioned)?

The earliest adjudication of the question before us that we have been able to find appears in the case of Texas Employers' Ins. Ass'n v. Morgan, Tex.Com. App., 295 S.W. 588, 589. There an employee had compromised and settled with the insurance carrier all of his claims for compensation for injuries received. After quoting sections 8 and 8b of Article 8306, supra, the court said: "Of course, as insisted by plaintiff in error [the carrier] the award of the board, unless in some way legally set aside, has the force of a judgment, and is binding on all parties. And likewise we think an agreement and settlement by the payment of a reasonable sum, when approved by the board, has the same force and effect, and, in either event, if the sum paid equals the maximum allowed to the beneficiaries in the case, there could be no recovery by them, perforce of the statute itself, for such payments, whether by award of the board originally or by voluntary agreement with the approval of the board." It was contended, in that case, by the insurance carrier that since the employee had made a complete compromise settlement that even though he died from his injuries before the expiration of the maximum period in which he could have been compensated, the beneficiaries had no cause of action under the statute. The court held against the contention so made; but held that the employee could not make such a contract or compromise that would affect the rights of the beneficiaries, insofar as their rights were controlled by statute. In that connection this language was used, 295 S.W. at page 590: "Clearly, an agreement of compromise and settlement between the employee and the association can be no more comprehensive than the award of the board, and it is equally clear the award does not affect the beneficiaries, except as to the extent of deductions for payments made thereunder."

Swain v. Standard Accident Ins. Co., Tex.Civ.App., 81 S.W.2d 258, affirmed by the Supreme Court in same styled case, 130 Tex. 277, 109 S.W.2d 750, involved a claim by beneficiaries after the employee had been paid compensation for a time. The employee compromised her claim for compensation, which settlement was approved by the Industrial Accident Board. She subsequently applied to the board to have the award approving compromise set aside; this the board declined to do; before time expired in which she could perfect her appeal to the district court, she died as a result of the accidental injury. The beneficiaries, simply perfected her appeal and prosecuted the suit in court. This was held to be an improper course to pursue; that question is not involved in the instant case. But applicable to the point in the instant case, the court held that at the death of the employee as a result of the injury, in effect, a new cause of action arose in favor of the beneficiaries which must be instigated and prosecuted in the manner provided by law. That the compensation to which the employee was entitled was the property and right of the employee during the entire compensable period, if she lived that long. That she could compromise that claim in any way which met the approval of the board. But any such compromise or settlement does not affect the statutory claim of the beneficiaries after the death of the employee, 81 S.W.2d at page 260, "except that the·

amount of compensation paid the employee for disability is deductible from the amount of compensation to which the beneficiaries would be entitled under the statute, as provided in section 8b, Art. 8306."

In Oilmen's Reciprocal Ass'n v. Coe, Tex.Civ.App., 29 S.W.2d 430, the employee had received in a lump sum compensation for the injuries received and thereafter died as a result of the injuries. The beneficiaries sued, alleging their rights under the statutes and recovered judgment, which the appellate court affirmed. In the opinion, the well recognized rule of law was applied, and it was held that on the death of the employee, who had been paid the lump sum for permanent total disability, compensation for death, in a beneficiaries' suit, was calculated by deducting actual payments made to the employee from the maximum amount recoverable by the beneficiaries for the death of the employee. Citing authorities, to which we also refer.

A somewhat similar question to that here involved was before the U. S. Circuit Court of Appeals and reported in Western Casualty Co. v. Hunt, 5 Cir., 69 F.2d 129. Certiorari was granted by the U. S. Supreme Court, but subsequently dismissed, 293 U.S. 530, 55 S.Ct. 207, 79 L.Ed. 639. In that case, Hunt, the employee, received an injury on March 25, 1931. Claim was allowed and compensation was awarded by the board. The employer recognized liability for compensation and continued to pay the employee full wages until he died on July 25, 1931. Under a custom existing between the employer and employees, the salary payments covered the full amount of compensation due each week and the excess was a gratuity from the employer. The employee agreed to this arrangement. At the death of the employee, his beneficiaries sued for the full statutory 360 weeks' compensation, dating from the time of the injury. Recovery was had by the beneficiaries, as prayed for. The judgment was reversed and the court used this language, 69 F.2d at page 130: "After Hunt's injury, Armour & Co. [employer] was under no obligation to pay him his salary in full, and it was perfectly proper for the parties to agree that $20 of the salary paid him should be considered as a liquidation of the compensation due him under the Workmen's Compensation Law. He lost nothing by the arrangement. On the cont..ary, he gained a great deal. While Hunt was

alive, his wife and children had no claim to compensation. The cause of action continued in their favor after his death, but they were bound by any agreement he made or course of conduct in which he acquiesced during his life. They were not entitled to receive compensation for the full period of 360 weeks, but only so much as remained unpaid. Texas Employers Ins. Ass'n v. Morgan (Tex.Com.App.) 295 S.W. 588. We think appellant was entitled to deduct $20 per week from the compensation awarded appellees for the period Hunt was paid by Armour & Co."

Applying the rules announced in the foregoing authorities, it is apparent to us that plaintiffs in this case would not be entitled to recover compensation for the time Watkins lived and for which time he made settlement with the carrier during his life. To do so, in our judgment, would be a double recovery, for which we find no provisions in the Workmen's Compensation Act to justify. So long as Watkins lived, the beneficiaries had no right of compensation. He made a settlement with the defendant carrier of insurance to cover that period. It is true the amount received was small as compared to what it would have been had award been made by the board for 60% of his average weekly wage; but such compromise settlement as it was, had the sanction of the board, and after a trial to the district court and appeal to this court, the compromise settlement was never set aside, but confirmed by this court. Texas Employers Ins. Ass'n v. Watkins, Tex.Civ.App., 90 S.W.2d 622, supra. The trial court erred in this case in awarding to the beneficiaries a recovery of compensation for the full period of 360 weeks, beginning with the date of the death of Watkins.

■ It is our opinion and we so hold that plaintiffs' recovery should have been for 360 weeks' compensation, beginning with the date of the injury, deducting the number of weeks between the date on which the accident occurred and that on which the employee died, he having been paid for that time under the terms of his compromise settlement with defendant.

■ Because of the condition of the pleadings, we cannot render judgment for plaintiffs in the amounts which it appears from the testimony they should have recovered. This is true for one reason, that by the pleadings only an average weekly wage of $12 was alleged, whereas the evi-

dence indisputably shows that Watkins' monthly wage was $75, and plaintiffs endeavored to file a trial amendment to meet the facts. This was denied them by the court. We think they should have been permitted to do so. As the pleadings now stand, they would not support a judgment for a greater amount than $7 per week, the minimum allowed by law. The ends of justice would be best served by a reversal of the judgment and a remand for another trial to permit the parties to amend the pleadings, if they desire. Sun Oil Co. v. Gunter, Tex.Civ.App., 125 S.W. 2d 338, and cases cited. The assignment of error raising the point must be sustained.

■ Defendant's fourth proposition complains of the action of the court in permitting the introduction of testimony to show the unfairness of the compromise settlement between Watkins and the defendant. We think this point is well taken. That question was foreclosed in the previous suit of Texas Employers Ins. Ass'n v. Watkins, supra.

Propositions 5 and 6 complain of argument made by plaintiffs' counsel in regard to the compromise settlement. From what we have said, the matter of the compromise settlement is removed from this cause, and the same question should not arise upon another trial.

■ Eighth proposition complains because the court submitted an issue inquiring if the insurance policy covering Wolf & Hull was intended by the parties to inure to the benefit of F. J. Watkins. The trial amendment filed raised the issue and there was evidence to support it. No error is presented by this assignment. By the ninth proposition it is complained that the court erred in permitting the trial amendment just referred to. There is no merit in the contention under the facts presented by the record, and it likewise is overruled.

■ Tenth proposition challenges the correctness of the manner in which certain negative issues were submitted, when each was followed by a request from the court to answer "It was" or "It was not". It is claimed that the quoted words following an issue destroy and negative the right of a complaining party to have the question answered from a preponderance of the evidence. We are cited to the case of Fidelity & Casualty Co. v. Van Arsdale, Tex.Civ.App., 108 S.W.2d 550, and other cases which apparently involved similar questions. We have had occasion twice to pass upon the point involved and have held adversely to defendant's contention. See Traders & Gen. Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391, writ dismissed upon motion of all parties; Traders & Gen. Ins. Co. v. Huntsman, Tex.Civ.App., 125 S.W.2d 431, writ dismissed, judgment correct. The order of the Supreme Court in the Huntsman case, supra, was in effect an overruling of the principle announced in the Van Arsdale case, supra, and other cases by the Courts of Civil Appeals somewhat analogous to it. We therefore overrule the assignment in the instant case.

■ The eleventh proposition presented by defendant contends that special issue 8 was duplicitous. It reads: "Do you find from a preponderance of the evidence that manifest hardship and injustice would result to the plaintiffs unless the compensation which may be due them, if any, shall be awarded in a lump sum?"

The evidence in this case shows that the widow was without funds. That she was a tenant farmer; that she and her sons have rented land and since the injury to her husband, they had endeavored to earn a living in this manner; that if payment should be made to her in a lump sum she would use the money to buy a small farm and thus procure a place for her minor sons to work and support the family; none of these matters were in any way contested by defendant. Under rather similar conditions, we have heretofore held that such an issue was not open to the objection here urged. Traders & Gen. Ins. Co. v. Blancett, Tex.Civ.App., 96 S.W. 2d 420, writ dismissed; Southern Underwriters v. Shipman, Tex.Civ.App., 97 S.W. 2d 370, writ dismissed. See, also, Speer's Special Issues, Sect. 604. The assignment is overruled.

For the reasons herein stated, the judgment of the trial court is reversed and the cause remanded for another trial, in line with our conclusions herein expressed.

Reversed and remanded.