## TRAVELERS INS. CO. v. WARRICK.
### No. 12403.

United States Court of Appeals
Fifth Circuit.

Feb. 16, 1949.

Charles S. Pipkin, of Beaumont, Tex., for appellant.

Mike Daughtry, of Beaumont, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

This is an action for death benefits under the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., brought by the widow of a deceased employee against Appellant as the insurance carrier of the Gulf Oil Corporation, the employer. The deceased, Joe Warrick, was

employed to operate a mule-drawn mower in cutting grass on the Oil Company's property. On the morning of June 10, 1947, he reported for work as usual—ostensibly in good health—changed clothes, and mowed grass in a designated area until lunch. He ate his lunch at the "Victory Garden" about "five blocks"—according to a witness—from the area where he was to cut grass that afternoon. After lunch he proceeded to this area in the company of five other employees who did the same type work as Warrick, and they started cutting grass in a pattern of about one city block each. When their mowers would come close enough, they would yell and joke at each other from a distance. Warrick's helper left him to get some water at a place approximately one-half mile from where Warrick was mowing. When he returned some thirty-five minutes later, Warrick's body had been discovered by fellow employees who, upon noticing that Warrick's team had remained immobile for an unusual length of time, investigated and discovered his lifeless body, lying face down on the mown grass, with clothing unburned and intact, his hat and gloves on and his whip draped across his shoulder. His body lay behind his mower and in the swath it had cut. The mown grass was undisturbed, indicating the absence of any jactations of his body in death agony or in struggle. A Company doctor, who was summoned promptly, pronounced Warrick dead from a cause or causes not then known. The body remained in the area until after a preliminary inquest was held by a Justice of the Peace. Several people attempted to ascertain positive proof as to the cause of death but were unsuccessful. After the body was removed to a funeral home, an autopsy was performed by Dr. Williford, a specialist in pathology. His report stated that the death was caused by "third degree burns and inhalation suffocation, means and manner unknown". Although other persons were working in the same general area they neither heard any explosion or outcry nor detected any unusual odors or gases. When the investigators arrived, the mules, still hitched to the mower, unharmed and unagitated, were standing nearby, patiently awaiting their driver who never returned.

There is no direct evidence as to how the deceased received the fatal burns and suffocation, but these facts were shown:

(a) The deceased reported for work on the date of his death apparently in good health.

(b) He was found dead at a place on the employer's premises where he had been directed to work.

(c) His body bore burns of second and third degree severity, which, together with suffocation, several doctors testified, were the cause, or causes, of death.

(d) There was medical evidence that the burns were similar to those usually caused by bodily exposure to high octane gasoline.[1]

(e) A pipe line, formerly used to transmit casinghead gas, was under the ground approximately five feet distant from where the body was found. This line at the time of Warrick's death, according to the testimony, was filled with water under pressure of 85 pounds.

(f) His employer refined several grades of gasoline on nearby premises.

(g) There is testimony that the severity of his burns would cause intense suffering and make it highly improbable that he could have received the burns before he began work that morning and continued to work thereafter for $7\frac{1}{2}$ hours.

(h) There is no evidence that the deceased departed from either the premises of his employer or the scope of his employment between the beginning of his day's work and the time of his death.

(i) There is no evidence that he received the injury elsewhere and no justifiable inference to that effect.

The defendant offered evidence tending to show that:

(1) The pipe formerly used in transmitting casinghead gas and which crossed the

---

[1] "Q. How did those burns that you found on men in service, performing an autopsy or otherwise, that you knew had come from high volatile gasoline, compare with the burns you found upon this Negro Joe Warrick's body? A. They were identical in appearance." (R. 131.)

field where deceased was working was closed off and that no casinghead gasoline passed through this line after March 31, 1947, on which date the line was filled with water and tested with pressure up to 225 pounds with no leaks being detected. This line was buried two or three feet under the ground and the water thereafter was continuously maintained, until the date of Warrick's death, at approximately 85 pounds pressure.

(2) Sufficient time had elapsed after he was last seen alive until his body was discovered for him to have gone off the premises and to have been exposed to gas elsewhere.

(3) The burns, if from gases, would have been most painful, causing deceased to struggle and writhe so as to disturb the ground and grass upon which he lay.

(4) Other workmen in the same general area neither saw, heard, nor smelled anything that would produce death.

(5) Immediately after the discovery of the body the unused pipe line was tested for gas leaks and none were found.

(6) The burns could have been several hours old.

(7) There were no electric lines in the area.

(8) It was a clear, bright day with a steady 18-mile per hour wind blowing in such a direction that it would have blown gases from the refinery in the opposite direction from the field in which the deceased was working.

(9) If he had remained in the scope of his employment and with his mules he, like they, would have remained unharmed.

(10) Employees of Gulf Oil Corporation testified that they had washed their hands and clothes in casinghead gasoline and had upon occasion inhaled it without harmful results.

There was testimony from which the jury could believe that the deceased was killed almost instantly [2] and that his burns were not caused by fire.[3]

From the evidence and testimony the jury arrived at its verdicts that:

(1) Warrick received a physical injury on the date of his death.

(2) The injury, in a natural sequence, resulted in his death.

(3) The injury was received in the course of his employment.

The Court then entered judgment for the plaintiff in the amount of $7,200.00. From this the defendant appealed, urging as points for reversal five specifications of error. All of the points revolve around the sufficiency of the evidence by which appellant contends, not only that there is no evidence to support the verdict, but that the facts and circumstances preponderate to the contrary and completely rebut the evidence of the plaintiff.

The burden of proof is placed on the plaintiff by the Workmen's Compensation Law of Texas to show by the preponderance of evidence that the deceased employee sustained an accidental injury in the course of, and arising out of, his employment, which, in its natural sequence, produced his death. However, it is not necessary that the burden of proof be discharged by direct evidence but may be done on circumstantial evidence alone, and the question as to whether or not the circumstances are sufficient to prove a disputed fact is generally for the jury. The circumstances proven need not exclude every other rea-

---

[2] Dr. Williford testified (R. 156):
"Q. You mean a one percent or two percent concentration of gas out in the open? That is, just take a given area and take one percent of it saturated with gas or filled up with gas, present in that percentage or proportion, would kill a man? A. The authorities have it one or two percent will kill them within five minutes.
"Q. Within five minutes? A. Yes, sir.
"Q. That means he doesn't get any other air? A. He gets all air and one percent of it is gas."

[3] Dr. Williford testified (R. 158):
"Q. Well, if it wasn't a fire burn, just some of this stuff got on his skin like you would take water—A. Some volatile substance would have to get on his skin and the man inhale it which he would do if it got on him.
"Q. And you don't think there was any fire or sudden blow up or explosion? A. I know there was no fire that contacted the patient."

sonable hypothesis, but the weight and the effect thereof ordinarily must be determined by the jury.

The appellant contends that the jury arrived at its verdict by piling one presumption or inference upon another presumption or inference (17 Tex.Jur. p. 247, § 57; Lumbermen's Mutual Casualty Co. v. Vaughn, Tex.Civ.App., 174 S.W.2d 1001), but after a review of all the testimony and the known facts, we cannot say as a matter of law that it was necessary for the jury to have done this.

There was evidence to justify the jury in concluding: (a) that Warrick died suddenly; (b) that he died in the place, or at the scene, of his employment; (c) that his death was the result of an accident; (d) that his sufferings were so intense and the accident so fatalistic that he doubtless received it on the premises, or in very close proximity to the premises, wherein he was at work; (e) that the test for gas in the nearby casinghead gas line was not absolute in the sense that it excluded all possibility of error; (f) that tests of the nearby pipe for gas after the accident do not exclude the possibility of the presence of gas in a dangerous quantity at the time of the accident, in view of the highly volatile character of such gas and the strong wind that was blowing at the time.

It is not for this Court to determine the mental processes by which a verdict was arrived at, but only whether there was sufficient evidence to support the verdict. We are satisfied that the plaintiff made out a prima facie case. The defendant rebutted, or attempted to rebut, the inference deducible from the facts shown by the plaintiff. Whether it succeeded or not was for the jury to decide.

"It is not necessary that this Court concur in the facts as found by the jury, but merely to determine that a jury question was involved in a controversy of evidence, inferences, and presumptions as to the effect of which the minds of reasonable men might differ, and in the jury's solution of which we cannot say there was no substantial support." Mutual Life Ins. Co. of New York v. Hamilton, 5 Cir., 143 F.2d 726, 732.

A jury is not proscribed from drawing multiple inferences in a case with multiple facts and circumstances in evidence. It may draw as many separate inferences as there are separate facts or circumstances. It may not, however, treat a fact inferred as a fact established that, in turn, can serve as the basis for a further inference and thereby spin out a chain of inferences into the realm of pure conjecture. 20 Am. Jur. 168.

The jury believed from all the facts and circumstances that Warrick sustained an accidental injury in the course of his employment, and that such injury, in a natural sequence, caused his death.

The facts and circumstances, and the inferences that could reasonably be drawn therefrom, were for the jury, and were of sufficient probative force that this Court should not disturb those findings.

The judgment of the lower Court is Affirmed.