AMERICAN MOTORISTS INSURANCE COMPANY, Appellant,

v.

Mrs. Vera LANDES, Individually and as mother and next friend of Dorothy Jean Landes, et al., Appellees.

No. 16730.

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1958.

Rehearing Denied March 27, 1958.

---

G. W. Parker, Jr., Fort Worth, Tex., Stone, Agerton, Parker & Kerr, Fort Worth, Tex., of counsel, for appellant.

Robert L. Ivy, Fort Worth, Tex., Herrick, Ivy & McEntire, Fort Worth, Tex., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

JONES, Circuit Judge.

L. W. Landes was an employee of General Dynamics Corporation at its Convair plant in Tarrant County, Texas. On July 15, 1955, he sustained, while at work, a muscle strain in his upper right abdomen. At 6:05 on that evening he reported the accident at the company infirmary and its record showed the occurrence as happening at 6:00 p. m. Landes died on July 1, 1956, nearly a year after the strain was received, from a malignant tumor which existed prior to the receiving of the strain but which was undetected for some time thereafter.

The widow of Landes, for herself and for their five children, claimed that the injury stimulated the activity of the cells of the malignant tumor thus accelerating its growth and so causing the death of the husband and father. This claim was presented as the basis for a workmen's compensation death benefit award and the claim was denied by the Industrial Accident Board of Texas. After this rejection of the claim, suit was instituted against the employer's workmen's com-

pensation insurer. The jury returned a special verdict finding that Landes sustained an accidental injury in the course of his employment which aggravated a pre-existing tumor and that such injury was a producing cause of Landes' death. A judgment was entered for the widow and children. From the judgment the insurance company has appealed.

Mrs. Landes testified that on July 15, 1955, her husband was on the second shift and got off work at 12:15 in the morning and arrived home about 1 o'clock. Over objection she was permitted to testify that her husband stated to her, upon his reaching home how he was hurt and where he was hurt. She related that he had said he was working on a machine that was too small for the part or piece of metal he was cutting, that he was holding it and it got away from him, that he tried to hold it but it jerked a knot in his side. He showed her, so she testified, where he hurt, and it was in the region under the ribs. Such evidence, urge the appellants, is clearly hearsay and the time interval from about 6:00 in the evening until 1:00 in the morning prevents the testimony from coming in under the res gestae exception to the hearsay rule.

■ The testimony of the decedent's wife as to what her husband told her regarding the manner in which he was injured was hearsay. What the husband said to her was not the spontaneous utterance which accompanied the occurrence, it was not made at or near the time of the injury nor was it during excitement or pain. We think the res gestae exception to the hearsay rule had no application to the statements as to the manner in which the injury was received or as to the pain which the injured man then felt. Beck v. National Surety Co., 5 Cir., 1949, 171 F.2d 862; Winningham v. Travelers Insurance Co., 5 Cir., 1937, 93 F.2d 520; Halleck v. Hartford Accident & Indemnity Co., 5 Cir., 1935, 75 F.2d 800. But the evidence of Mrs. Landes was merely cumulative on matters which were clearly shown by other admissible evidence and we think the admission of

her testimony was harmless. Rule 61, Fed.Rules Civ.Proc. 28 U.S.C.A.; Standard Accident Ins. Co. v. Rossi, 8 Cir., 1929, 35 F.2d 667.

■ The decedent's wife called Dr. Gerald King as a witness. Landes had been sent to him about eight months after the accident for examination, treatment and reporting to Landes' attorney as to his condition. He testified as to the strained muscle as told to him by Landes. Objection to Dr. King's testimony was made on the ground that a doctor employed to examine and testify cannot give an opinion based in part on the case history related by the patient. Counsel for the widow then, instead of seeking a ruling on the admissibility of the doctor's opinion based on his examination decided to and did put to Dr. King this hypothetical question:

"Dr. King, assuming that L. W. Landes received an injury to his right side on or about July 15, 1955, when he tried to catch a heavy part; assuming that he complained of pain in the right side from that time on, until the time he saw you; assuming that he was operated on for a tumor, for a tumor mass, in October of 1955; assuming that history is true; assuming he did receive the injury— of course, you were not there—but assuming he did receive it; assuming that prior to that time, prior to July 15th, when he received the injury, he was in good health, and had no trouble that he knew of, he was able to do a hard day's work, and, as a matter of fact, held down two jobs prior to that time; as—that is true, Doctor, do you have an opinion based upon reasonable probability as to whether or not the injury he received at Convair on July 15, 1955 aggravated a tumor and became a producing cause of the death of L. W. Landes?"

Objection was made and overruled. The witness answered that he had an opinion and that the injury aggravated the tumor and became a producing cause of death. On cross-examination the appellant's

counsel elicited the following from the witness:

"Q. Are you assuming a blow or a strain? A. Well, it is my understanding was he had a heavy weight against his abdomen, if I am not mistaken.

"Q. That he received a blow? A. No, not a blow; it was more pressure and strain, a strain, I guess that is what you would call it.

"Q. Suppose he had reached to catch a part and had strained himself that way, would that have aggravated a retroperitoneal tumor so that it would produce his death? A. That would depend upon the muscles involved in the strain; of course, the retroperitoneal lobes are lying back of the peritoneum, and you have the deep muscles of the back just back of that.

"Q. A strain of the muscle of the front would not aggravate a retroperitoneal tumor, would it? A. If it was just purely in front I don't think it would."

The action of the trial court in overruling the objection to the hypothetical question is assigned as error. The appellant objects to the using of the word "injury" rather than "strain" in the question, and contends that the question should have been more specific as to the location of the strain. Any inadequacies inhering in the hypothetical question were removed by the clarifying questions and answers on cross-examination. 58 Am.Jur. 475, Witnesses § 844. There was no prejudicial error arising from the hypothetical question and the answer to it.

At the conclusion of the evidence the appellant moved for a directed verdict. The motion was denied. The court submitted to the jury two special issues for a determination of whether Landes received an accidental injury on July 15, 1955, in the course of his employment, and if so, whether such injury was a producing cause of Landes' death. The jury answered both questions in the affirma-

tive. The appellant moved for a new trial. The motion was denied and judgment was entered for appropriate amounts as measured by the Texas Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq. The appellant, asserting error in overruling its motions and entering judgment for the appellee, insists that the case must be reversed, not only because of the errors in receiving the testimony of Mrs. Landes and Dr. King, but because the finding that the strain was a producing cause of Landes' death was not based on any evidence of probative force but on speculation, surmise and suspicion. The appellant cites authorities for the propositions that incompetent evidence cannot form the basis of a finding of fact, and that if the cause of death is not shown by substantial evidence recovery should be denied. Then saying that the testimony of Dr. King was incompetent, and that the finding that the injury was a producing cause of death rested upon his testimony, we are urged to hold that the special verdict and the judgment upon it cannot stand. Dr. King's testimony was, we have held, admissible. The doctors who testified for the appellant, although in some instances reaching conclusions different from those of Dr. King, do not discredit his opinion. Dr. Chambers was asked if a strain such as he understood Landes had would have caused, aggravated or accelerated the tumor. He replied:

"To my knowledge it would not affect a retroperitoneal area, it would affect the abdominal area; had it been in the abdomen, you would have what—I don't know, because I am not—millions of dollars have been spent on cancer and nobody knows, and I certainly should not sit here and tell you all something I don't know, but here we are faced with two different areas, the abdominal cavity and the retroperitoneal cavity, and the retroperitoneal space, and Mr. Landes, unfortunately, was pointing to the abdominal cavity, and it went through to the

retroperitoneal area, as my x-rays showed."

Dr. Daly, who performed the operation, conceded that a strain, if severe enough, could have the effect of aggravating and exciting a pre-existing cancer. Dr. Andujar was of the opinion that "this strain could" not "have been a producing cause of this man's death". Dr. Lace, consulting medical director at the Convair plant, gave it as his opinion that the strain "of the muscle fibers of the front of the abdominal wall where I think it [the strain] was" would not have affected Landes' tumor. But he also said that he was feeling the tumor in making his examination and mistaking it for the bruise in the muscles caused by the strain.

Expert medical witnesses are not barred from expressing their opinions merely because they are unable or unwilling to state their conclusions with certainty. Such opinions are admissible as to the cause which produced, or probably produced, or might have produced, a physical condition resulting in disability or death. Texas Employers' Ins. Ass'n v. Talmadge, Tex.Civ.App., 256 S. W.2d 945. An injury received by an employee in the course and scope of his employment may be a producing cause of disability or death through the aggravation of a pre-existing injury or disease. Texas Employers' Ins. Ass'n v. Watkins, Tex.Civ.App., 135 S.W.2d 296. See also Safety Casualty Co. v. Walls, Tex.Civ. App., 117 S.W.2d 879. The testimony was conflicting as to whether Landes' strain aggravated the pre-existing tumor and was a producing cause of death. Resolving the conflicts and sifting the facts and opinions was a jury function and the submission to the jury was proper. Parish v. Pacific Indemnity Co., 5 Cir., 1955, 221 F.2d 483; Travelers Ins. Co. v. Rowand, 5 Cir., 1952, 197 F.2d 283; Travelers Ins. Co. v. Warrick, 5 Cir., 1949, 172 F.2d 516. The question put to the jury as to the cause of death was raised by the pleadings and the evidence and was properly submitted. Texas Employers' Ins. Ass'n v. Watkins, supra.

Finding no prejudicial error in the proceedings which culminated in judgment for the appellee, the judgment is

Affirmed.