Mrs. Ernestine Smith **TORRENCE,**
**Appellant,**

v.

**UNION BARGE LINE CORPORATION,**
**Appellee.**

**No. 26194.**

United States Court of Appeals
Fifth Circuit.

March 12, 1969.

Rehearing Denied April 24, 1969.

H. Alva Brumfield, Sylvia Roberts, Baton Rouge, La., for appellant.

Thomas W. Thorne, Jr., Charles E. Lugenbuhl, New Orleans, La., for appellee; Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., of counsel.

Before GEWIN and GODBOLD, Circuit Judges, and CHOATE, Senior District Judge.

CHOATE, Senior District Judge:

This is an action brought by the appellant, Mrs. Ernestine Smith Torrence, for herself and her seven minor children, for the wrongful death of her husband, Robert Torrence, captain of the tug Cap-

tain George. Torrence's death was alleged to have been caused by the negligence of the captain, crew, or owner of the M/V Mariner, owned and operated by the appellee. Other defendants were dismissed from the case and are not parties to this appeal. Jurisdiction of the instant claim is based on diversity of citizenship and the issues were submitted to a jury upon special interrogatories.

On February 25, 1966, at about 12:15 A.M., fourteen barges in the tow of the Mariner broke loose while the tow was maneuvering around a bend in the Mississippi River at Thomas Point, above Baton Rouge, Louisiana.

Over two hours after the breakaway and between seven and ten miles downriver, Torrence, the deceased, engaged in an attempt to capture one of the barges. Ultimately, the tug he was piloting, together with the barge he was attempting to recover, collided with the anchor chains of another vessel. With the tug rapidly taking on water, Torrence jumped into the river and was never found.

Several written interrogatories covering the various issues in the case were submitted to the jury. However, the jury answered only one, the first, which read as follows:

> Q. Was the captain or crew or owner or any representative or agent of the owner of M/V Mariner guilty of negligence?
>
> A. No.

As grounds for reversal, appellant asserts that (1) the trial court erred in failing to give an instruction regarding the rescuer doctrine, (2) the trial court erred in failing to give an instruction regarding unseaworthiness, (3) the jury's verdict was a product of erroneous instructions regarding proximate cause, and (4) there was no evidence to support the jury's finding that Harrison, the captain of the Mariner, was not negligent.[1]

■ Because of the jury's disposition of the case, the scope of this Court's inquiry into the alleged errors raised by appellant is severely restricted. The jury, without reaching the doubtful proposition that Torrence's death was proximately caused by the fact of the breakaway, merely determined that Harrison was not negligent. We therefore need only examine appellant's contentions insofar as they relate to this issue.[2]

The crux of appellant's case was that Harrison was negligent in that he knew or should have known of treacherous conditions at Thomas Point on the night in question and that these conditions would likely cause a breakaway if adequate precautionary measures were not taken. To demonstrate Harrison's alleged negligence, appellant primarily relies on Harrison's own testimony that he knew there would be some eddies at the bend; that they would extend three-fourths to seven-eighths from the center of the river; that he proceeded around the bend approximately one-quarter off the shore; and that had he *actually* known the severity of the conditions he would have waited until morning to make the trip.[3]

■ At the outset, we must remain cognizant of the inherent dangers involved in piloting a vessel through navigable waters of the type here involved. A certain amount of risk is inevitable

1. Other possible negligence factors, such as improper securing of the barges to the Mariner, were not advanced in the lower court or on this appeal.

2. While it is true that an erroneous refusal to give an unseaworthiness instruction would bear directly on the issue of initial fault, the record discloses that the trial court properly declined to give such an instruction. There was no evidence whatever of any causal connection between the alleged items of unseaworthiness and the breakaway. The only testimony adduced at trial on the point was to the contrary.

3. Appellant also emphasizes the fact that Harrison did not call ahead to pre-determine the conditions at the bend. However, Harrison had testified that he was quite familiar with that portion of the river and, in any event, there was no competent evidence to show that such an inquiry would have been of avail.

and everpresent and cannot be avoided. Countless thousands of lives have been claimed by the perils of the sea through the fault of no one. As this Circuit recently observed, a maritime accident may be "unavoidably and accidently caused by a combination of prevailing wind, tide, and river currents." Standard Dredging Corp. v. Texaco, Inc., 395 F.2d 744, 745 (5 Cir. 1968). Upon this backdrop, we turn to the testimony of Harrison himself, an employee of the appellee since 1936, and a pilot since 1948.

Q. Could you tell us what was different about this night from all of the other times that you have been through with your tow?

A. I never seen the current as swift as it was that night, or the eddy working so hard as that night; it was boiling.

Q. What do you mean by boiling?

A. Well, I mean the river just kept boiling up and at the top making big—it starts out small, you see, and it keeps going and widens out, widens out until finally it hits where the current is, it is just like hitting a brick wall. I mean it just bunches together.

Q. Captain, during the time that you were going through Thomas Point before, and in all of your experience, have you ever had a tow break up before this time?

A. No.

Q. Captain, truthfully, have you ever encountered current conditions or any conditions equal to or greater to the current conditions that you encountered at Thomas Point on the night of this accident?

A. No, sir, I don't believe that I have. I have hit some pretty hard currents, but I think that is the worst of the worst, I think.

Harrison had also testified regarding certain precautions he had taken prior to embarking on the trip.

 It is well settled that it is the jury's function to weigh the evidence and the credibility of the witnesses, Helene Curtiss Industries, Inc. v. Pruitt, 385 F.2d 841 (5 Cir. 1967), and that the jury's determination should not be disturbed if there was competent evidence in the record to support it.[4] In the instant case, the jury could have rationally concluded that the conditions were so extreme and unusual at the time and place in question that even an experienced captain would not and should not have foreseen the risk. This being the case, the verdict must stand. Concurrently, appellant's objections regarding other aspects of the case are without merit and fall of their own weight.

Affirmed.

---

4. See Helene Curtiss Industries, Inc. v. Pruitt, *supra*; Isaacs v. American Petrofina, 368 F.2d 193 (5 Cir. 1966); Wells v. Warren Co., 328 F.2d 666 (5 Cir. 1964); American Fidelity & Casualty Co. v. Drexler, 220 F.2d 930 (5 Cir. 1955).