Mr̦s. **Harvey STANCILL, Plaintiff-Appellant,**

v.

**McKENZIE TANK LINES, INC., and Carriers Insurance Company, Defendants-Appellees.**

**No. 73–3081**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.
June 27, 1974.

---

* Rule 18, 5 Cir., Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Floyd M. Buford, Macon, Ga., for plaintiff-appellant.

Albert P. Reichert, Jr., G. Boone Smith, III, Macon, Ga., for defendants-appellees.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

In this diversity action, Mrs. Harvey Stancill appeals from a jury verdict in favor of the defendants-appellees, rendered after trial in the United States District Court for the Middle District of Georgia. The jury found that McKenzie Tank Lines, Inc. was not liable to Mrs. Stancill for the death of her parents caused by a collision between their pick-up truck and a tank truck driven by a McKenzie employee, Jimmy Whitely. In support of her appeal, Mrs. Stancill alleges several grounds of error, including insufficiency of the evidence, improper consideration of the defendant's counter-claim, inconsistent answers to the special interrogatories submitted to the jury, and improper admission of expert testimony offered by the defense. We affirm.

I

At about 4:30 P.M. on December 13, 1971, Jimmy Latrell Whitely, a truck driver employed by McKenzie Tank Lines, Inc., was proceeding North on U. S. Highway 441, a few miles south of Homerville, Georgia, in a tank truck owned by his employer. Driving conditions and visibility apparently were excellent. Highway 441 is a two-lane paved road, and was in a good state of repair, for it had been recently resurfaced. There was no center line.

As he approached the intersection of Highway 441 and Shiloh Road, Whitely observed a pick-up truck, travelling at about ten to fifteen miles per hour, enter Highway 441 from Shiloh Road and begin to make a left turn in front of him. The pick-up truck, driven by Obediah Carver, the appellant's father, did not stop at the stop sign controlling access from Shiloh Road onto Highway 441, nor did it yield the right of way to the tank truck driven by Whitely. In an attempt to avoid striking the Carver vehicle, Whitely pulled into the left, or southbound lane, the lane the turning pick-up was entering. His attempt was unsuccessful, and his truck struck the left front side of the Carver truck, turning it completely around. Mr. Carver died instantaneously and Mrs. Carver, a passenger in the pick-up, died shortly thereafter. Although the tank truck swerved into a ditch and overturned, Whitely was only slightly injured.

Mrs. Stancill brought this action against McKenzie and its insurer to recover damages for the death of her parents, and McKenzie counterclaimed for the damage to the tank truck and the loss of its use. At trial, extensive evidence was introduced as to the point of impact, whether Whitely had had sufficient

room in his own, or northbound, lane to avoid the accident, the speed of the vehicles, and the like. Based on this evidence, and in answer to special interrogatories, the jury concluded that both Whitely and Mr. Carver had been negligent, but that only Mr. Carver's negligence was a proximate cause of the accident. The jury thus rendered a verdict for the defendants, but in answer to the interrogatory concerning damage to the truck, and its fair rental value, concluded that the appellee had not been damaged, and made no award on its counterclaim.

## II

■ Mrs. Stancill's first contention is that the district court erred in permitting McKenzie to introduce evidence in support of its counterclaim as to the damage to the truck driven by Whitely, and its fair rental value. Under Georgia law, the appellant urges, the counterclaim could not have been legally imposed against her, because the claim for damage to McKenzie's truck was a debt of her parents' estate and, therefore, cannot limit her right to recover for their wrongful death. See Georgia Code Annotated, Sections 105–1305, 113–1509 (1968). Since the evidence introduced in support of this improper counterclaim clearly confused and misled the jury, Mrs. Stancill argues, the error is prejudicial and mandates reversal.

We are by no means certain that a counterclaim of this type is the sort of "debt" which, under Section 105–1305, may not be asserted in a wrongful death action. Georgia does permit a lawsuit arising out of acts of a decedent to be brought against his heirs at law where there has been no administration of the

estate. Hughes v. Cobb, Ga.Sup.1942, 195 Ga. 213, 23 S.E.2d 701, 703. Here, there had been no administration of the estate, and Mrs. Stancill was the only heir at law. Necessarily, a separate action brought by McKenzie would have named Mrs. Stancill as defendant. Thus, whether Georgia courts would endorse the unnecessary circuity that separate actions on these claims would entail is unclear; federal courts will not.

Indeed, such a multiplicity of actions is precisely the evil the federal approach to counterclaims was fashioned to avoid. See 6 C. Wright & A. Miller, Federal Practice and Procedure, Section 1409, at 37–38. Far from being improper, the counterclaim advanced by the appellees was compulsory. Had it not been advanced here, it would have been lost as a federal cause of action forever. See Wright & Miller, supra, at 37. A counterclaim is compulsory under the Federal Rules of Civil Procedure, "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claims and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a).[1] As we noted above, Mrs. Stancill is the sole heir at law of her parents. Thus, only she and McKenzie Tank Lines were necessary parties to the counterclaim. It can hardly be doubted that a single occurrence is the wellspring of both the appellant's and the appellee's claims. The challenged counterclaim was properly asserted and the evidence supporting it properly introduced.

Mrs. Stancill also maintains that the jury was confused and misled by the presence of the counterclaim, but offers no evidence that the jury was improper-

---

1. Rule 13(a) provides:

 (a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

ly influenced by the testimony of the one witness who established McKenzie's damages. Moreover, although she suggests that the interrogatories concerning the counterclaim confused the jury and may have affected its determination of the liability issues, we find no reason to believe this was the case. The form of the special interrogatories required the jury to respond to the negligence and causation issues before it considered the question of damages. Even had the counterclaim been improper, then, it could not have influenced the jury's decision on the appellant's complaint.

### III

█ The contention to which we turn now is more complex, for Mrs. Stancill argues that the answers to several of the special interrogatories submitted to the jury are inconsistent with each other and with the general verdict, and that a new trial is required. More specifically, the appellant urges that the verdict de-

nying any recovery to McKenzie Tank Lines, Inc., and the answers to Interrogatories 8 and 9, showing that McKenzie was not damaged, are inconsistent with the answers to Interrogatories 3 and 4 in which the jury found that Obediah Carver was negligent and that his negligence was the proximate cause of the collision.[2] In the face of a finding of liability and an uncontested demonstration of damages, Mrs. Stancill maintains, McKenzie Tank Lines, Inc. should have received an appropriate monetary award. Thus, the failure of the jury to award damages to McKenzie gives rise to an impermissible inconsistency which, under Fed.R.Civ.P. 49(b), requires a new trial.

Rule 49(b) does endorse a new trial as one option open to a trial court when an actual inconsistency does occur.[3] But in determining whether Rule 49(b) requires a new trial in this case, a number of serious questions arise, not the least of which is whether an "inconsistency"

2. The special interrogatories were answered as follows:

SPECIAL INTERROGATORIES

1. Was Jimmy L. Whitley guilty of any negligence? YES.

2. If so, was his negligence a proximate cause of the collision? NO.

3. Was Obediah Carver guilty of any negligence? YES.

4. If so, was his negligence a proximate cause of the collision? YES.

(Answer 5 only if you have answered both 2 and 4 in the affirmative).

5. Of the total negligence of 100% causing the collision, what percentage is attributable to Jimmy L. Whitley and what percentage is attributable to Obediah Carver? [No answer].

(Answer 6 and 7 only if you have answered 1 and 2 in the affirmative).

6. What was the full value of the life of Obediah Carver? [No answer].

7. What was the full value of the life of Tonnie Steedley Carver? [No answer].

(Answer 8 and 9 only if you have answered both 3 and 4 in the affirmative).

8. What was the total damage to the tractor and trailer? Zero.

9. What was the fair rental value of the tractor during a reasonable time allowed for its repair? Zero.

3. Rule 49(b) provides:

(b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

exists at all. The answers are not inconsistent as a matter of logic: a finding that Mr. Carver's negligence caused the accident is not inconsistent with a conclusion that McKenzie suffered no damages and, therefore, should receive no award. One or more of these answers may be erroneous, but they are not inconsistent.

This case is not analogous to those cited by the appellant, where, after finding the defendant's conduct to have been nonnegligent or that both parties were at fault, the jury nevertheless proceeds to hold the defendant liable and award damages to the plaintiff. See Nordmann v. National Hotel Co., 5 Cir. 1970, 425 F.2d 1103; Welch v. Bauer, 5 Cir. 1951, 186 F.2d 1002. Such answers are legally and logically irreconcilable, hence truly inconsistent. What is involved here is not so much an allegation of *inconsistency* as one of *inaccuracy*; two of the jury's answers, and its general verdict, though correct in legal theory, neglect to take cognizance of the uncontested facts as to the defendant's damages. What must be determined, then, is whether this sort of "inconsistency" requires a new trial.

At least one decision of this Court holds that an incorrect verdict may be treated as analogous to an inconsistent one, and a new trial ordered on all issues. See Hatfield v. Seaboard Air Line Railroad Co., 5 Cir. 1968, 396 F.2d 721, 724. Three important factors distinguish *Hatfield* from this controversy, however, and convince us that a new trial is not required here.

First, the panel in *Hatfield* believed that the award of nominal damages there evidenced an improper jury compromise on the liability issue, "which could not help but affect the verdict as a whole", 396 F.2d at 724, and accordingly ordered a new trial on all issues. Here, however, we are not persuaded by Mrs. Stancill's assertion that the jury's failure to award damages to McKenzie on its counterclaim necessarily signals a compromise. The jury's conclusions as to negligence and causation are supported by the weight of the evidence. All of the jury's answers make sense in light of the evidence adduced at trial except the refusal to compensate McKenzie for its uncontroverted damages. Although this may have resulted from the jury's improper desire not to visit the negligence of her deceased father upon the appellant,[4] there is nothing about the verdict which leads us to believe that it was the result of a compromise on the liability issues. More appropriate than a complete new trial, then, would seem to be a retrial limited to the issue of damages, the sole issue on which the jury plainly erred. See Parker v. Wideman, 5 Cir. 1967, 380 F.2d 433, 437.

This brings us to the second distinction between this case and *Hatfield*: here McKenzie, the only party which could benefit from a retrial on the damage issue, has not appealed. The jury's findings in the first case as to liability would govern the second trial. Thus Mrs. Stancill, who has appealed, could not benefit from a trial on the damage issue alone. In such circumstances, a new trial will not be ordered to aid a nonappealing party.

■ A new trial as to *any* issue would be inappropriate for a third reason. By failing to object to the form of the verdict and answers at the time they were announced by the jury, both parties waived any objection to inconsisten-

---

4. Our examination of the trial transcript suggests another possible explanation for the jury's failure to award damages to McKenzie. During the course of the trial, the plaintiff was permitted to elicit a considerable amount of testimony concerning large sums of cash allegedly carried on the persons of the plaintiff's parents. None of this money, described as amounting to $75,000 or more, was ever recovered. The introduction of such evidence obviously had no relevance to this action for wrongful death, and, it would appear to us, was intended to induce sympathy for the plaintiff, who had apparently been deprived of a substantial portion of her inheritance. The fact that McKenzie received no award on its counterclaim may indicate that sympathy for the plaintiff was one result of this testimony.

cies under Rule 49(b). Employers Casualty Co. v. Dupaquier, 5 Cir. 1964, 338 F.2d 336, 337 (per curiam). The trial judge was careful to solicit objections from both counsel after the verdict was rendered and the interrogatories answered. He not only asked for objections before the jury, he called the attorneys to confer at the bench concerning possible objections. There were none. Had an objection been raised as to the consistency of the answers at that time, the district court could have elected to "return the jury for further consideration of its answers and verdict . . . ." Fed.R.Civ.P. 49(b). Having failed to raise this objection at trial, Mrs. Stancill cannot now assert it on appeal where the only option is a new trial. Confronted with no objection to the verdict or answers, it was not plain error for the district court to enter judgment upon the verdict as it did. Cf. Employers Casualty Co. v. Dupaquier, supra, at 337.

## IV

Next the appellant objects to the admission of the testimony of Frank M. Flanigan, an expert witness on McKenzie's behalf, on the ground that there was no foundation laid to justify its admission. She insists that the foundation was inadequate for three reasons: 1) Flanigan had never visited the scene of the accident nor examined the vehicles involved, but testified primarily from photographs and reports of other witnesses; 2) not all of the facts upon which his opinion was founded were admitted in evidence; 3) his opinion was based on the opinion of another expert.

■ Under Rule 43(a), Fed.R.Civ.P., federal courts must admit evidence that would be admissible under either federal or state standards.[5] So viewed, the appellant's first argument may be swiftly dispatched under Georgia law. In American Home Assurance Co. v. Stephens, Ga.App.1970, 121 Ga.App. 306, 174 S.E.2d 186, 188, the Georgia Court of Appeals permitted an expert who had neither been to the scene of the accident nor inspected the vehicles involved to give an opinion as to material facts concerning an automobile accident. The expert witness based his opinion on his study of photographs "and other considerations within the range of the evidence . . . ." The appellant concedes the import of this decision, but would have us distinguish it on the ground that here the expert's testimony was based on photographs and other considerations *not* within the range of the evidence.

■ This is, of course, precisely Mrs. Stancill's second contention: that since Flanigan "took into account" Corporal Collins's deposition, and unsworn statements by Collins and Jimmy Whitely, none of which were introduced at trial, his opinion was not based on evidence in the record and could not properly be received. In evaluating such contentions, we must recognize that the admission or exclusion of expert testimony is a matter within the sound judicial discretion of the trial judge. Only if we determine that his decision is "manifestly erroneous" may we find that he has abused his discretion and that reversal is required. Salem v. United States Lines Co., 1962, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317; Scott v.

---

5. Rule 43(a) provides:
 (a) Form and Admissibility. In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of

general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

Fancher, 5 Cir. 1966, 369 F.2d 842, 844. Seen in this perspective, the admission of Flanigan's testimony clearly does not require reversal.

Although Flanigan testified that he did use Corporal Collins's deposition and report, which were not in evidence, and Whitely's statement which was also not offered, it is apparent that the *facts* upon which Flanigan's opinion rested were in evidence, even if every document he referred to was not. It is also apparent from a reading òf the transcript that Flanigan testified primarily from photographs of the vehicles and the scene of the accident. The other facts he relied upon, such as weather and road conditions, Whitely's manner of braking the tank truck, and the nature of the gouges and scuff marks on the highway, were "in evidence", having been testified to by Deputy Webb and Corporal Collins, the investigating officers, or by Whitely and James Pittman, the only living witnesses to the mishap. Under a voir dire cross-examination by the appellant's attorney, Flanigan listed a number of facts undergirding his opinion as to the cause of the accident. Each factor he mentioned had been introduced, either as photographic or testimonial evidence. A thorough review of his testimony before the jury also fails to reveal any reliance on facts not in evidence. Thus we cannot agree that Flanigan's pretrial reference to materials not introduced at trial was prejudicial.

The cases cited by the appellant do not compel a contrary conclusion. They merely teach that an expert must be in possession of sufficient proved facts to enable him to express a "reasonably accurate conclusion", and that the facts upon which he bases his opinion must be disclosed to the jury. Gilbert v. Gulf Oil Corp., 4 Cir. 1949, 175 F.2d 705, 709; Atlantic Life Ins. Co. v. Vaughan, 6 Cir. 1934, 71 F.2d 394, 395–396, cert. denied, 293 U.S. 589, 55 S.Ct. 104, 79 L. Ed. 684. Thus, although the trial judge's discretion to admit expert testimony is wide, it is not so expansive as to allow whim or conjecture to be received in the guise of expert analysis. See Gilbert v. Gulf Oil Corp., supra; Atlantic Life Ins. Co. v. Vaughan, supra; See also Craig v. Champlin Petroleum Co., 10 Cir. 1971, 435 F.2d 933, 937. Nowhere do these decisions endorse the proposition that every document viewed by the expert must be introduced. Here, the facts relied upon were in evidence, and appear to be largely uncontroverted. To have permitted an expert to offer his opinion on such a basis was neither an abuse of the district court's discretion nor reversible error.

In challenging Flanigan's testimony, the appellant also contends that his opinion was impermissibly based on the opinion of Corporal Collins. It has long been the rule in Georgia that an expert may not base his opinion upon an opinion expressed by another witness. Walker v. Fields, Ga.Sup.1859, 28 Ga. 237; Holland Furnace Co. v. Willis, Ga. App.1969, 120 Ga.App. 733, 172 S.E.2d 149, 152. And some Courts of Appeals have held that the trial court must take steps to exclude any expert opinion that is *predicated upon* another opinion. 6816.5 Acres of Land, etc. v. United States, 10 Cir. 1969, 411 F.2d 834, 840; Taylor v. B. Heller & Co., 6 Cir. 1966, 364 F.2d 608, 613. We need not wrestle with the wisdom of such a rule, however, since we do not believe that Flanigan's opinion here was *predicated upon* the opinion testimony of another. First, it is clear that most of Collins's report concerns facts—measurements, descriptions, and the like—rather than opinion. In this respect, Collins was not testifying as an expert, and opinion founded on his report or deposition would not be improper. Moreover, Flanigan appears to have used Collins's deposition and report primarily as background material, rather than as the foundation of his opinion. Thus this case would appear to resemble Hensel Phelps Construction Co. v. United States, 10 Cir. 1969, 413 F.2d 701, 704, in which the Tenth Circuit held that where an expert did not predicate

his opinion on another's, but used the other opinion to corroborate his own findings, no exclusion was required.

 In any event, if the admission of Flanigan's testimony was erroneous, we do not believe that it was harmful. All of the facts on which Flanigan offered an opinion—the point of impact, the position of the vehicles before and after the collision, the nature of the intersection where the accident occurred —were already in evidence from other sources. Thus Flanigan's testimony and opinions were essentially cumulative, reinforcing the testimony of the two investigating officers and the two eye witnesses. Under Fed.R.Civ.P. 61,[6] the admission of such testimony, even if it was error, was harmless. See Leach v. Miller's Life Insurance Co., 5 Cir. 1968, 400 F.2d 179, 182; Aetna Casualty & Surety Co. v. Tryniecki, 5 Cir. 1961, 293 F.2d 289, 291; American Motorists Insurance Co. v. Landes, 5 Cir. 1958, 252 F.2d 751, 753.

### V

 Finally, the appellant contends that the evidence adduced at trial was insufficient to support the verdict rendered by the jury. In support of this assertion, Mrs. Stancill recites the testimony of witnesses favorable to her theory of the case, and points out certain discrepancies between testimony given by Whitely at trial and several statements in his deposition. In considering such arguments, an appellate court may not usurp the functions of the jury. It is not for us to weigh conflicting evidence, judge the credibility of witnesses, and evaluate the jury's verdict in that light. Torrence v. Union Barge Line Corp., 5 Cir. 1969, 408 F.2d 873, 875; United States v. Mills, 5 Cir. 1968, 399 F.2d 944, 948. Rather, "our sole function is to ascertain if there is a *rational basis in the record* for the jury's verdict." Helene Curtis Industries Inc. v. Pruitt, 5 Cir. 1967, 385 F.2d 841, 850, cert. denied, 1968, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 [emphasis in original]. And, in the words of the Supreme Court, "only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916, 923.

There is ample evidence to support the jury's verdict here. Both witnesses who observed the Carvers' pick-up truck immediately prior to the accident testified that it failed to halt at the stop sign at the intersection of U.S. Highway 441 and Shiloh Road. There was expert testimony by Chief Deputy Webb that, in his opinion, the Carver truck had failed to yield the right of way, and both photographic and testimonial proof was offered which indicated that a substantial portion of the Carver vehicle was in the northbound (Whitely's) lane at the time of impact. In light of this evidence, it was certainly not erroneous for the jury to conclude that the sole cause of the accident was the negligence of the driver of the pick-up and render a verdict in favor of the defendant.

For the reasons outlined above, the verdict appealed from is, in all respects,

Affirmed.

---

6. Rule 61 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.