George SHUSHEREBA, an individual, Plaintiff,

v.

R.B. INDUSTRIES, INC., Defendant.

Civ. A. No. 82–2285.

United States District Court,
W.D. of Pennsylvania,
Pittsburgh Division.

Feb. 6, 1985.

John Leonard, Kevin Leonard, Leonard & Leonard, Latrobe, Pa., for plaintiff.

Rodger Curran, Gail Gratton, Rose, Schmidt, Dixon & Hasley, Pittsburgh, Pa., for defendant.

## OPINION

SIMMONS, District Judge.

This product liability action arises out of injuries sustained by the plaintiff while operating a machine designed, manufactured and distributed by the defendant. The plaintiff sought to recover damages on the theory of strict liability, claiming that his injuries were caused by the defective design of the defendant's machine. After a trial on the merits, the trial court submitted the case to the jury through special interrogatories. The jury found that the defendant's machine was free from defect and judgment was entered for the defendant. Thereafter, the plaintiff filed a motion for a new trial. The plaintiff's arguments are without legal merit and his motion for a new trial is accordingly denied.

## I. FACTUAL BACKGROUND.

The plaintiff, George Shushereba, was employed by H.J. Lauris Company as a skilled, heavy construction machine opera-

tor and a site supervisor. Among various responsibilities, Shushereba operated a Model 200H Horizontal Earth Auger Drill. A horizontal earth auger drill is an underground boring machine consisting of two pieces of heavy construction equipment: a boring unit[1] and a power unit[2]. An earth auger drill is used to drill horizontal holes beneath existing obstructions, such as, for examples, a highway, a driveway, a railroad crossing or a creek bed. It is designed to eliminate the necessity of removing existing aboveground structures to lay utility, telephone, water, gas, sewage or cable television lines.

The defendant, R.B. Industries, designs and manufactures two types of horizontal earth auger drills to match specific horizontal boring applications: a "free boring" model, which simply augers a hole beneath the earth's surface, and a "casing pushing" model, which augers inside a casing. The latter type, which is the subject matter of this litigation, simultaneously bores a hole while it lays casing.

The horizontal earth auger drill is operated by hydraulic power; the power unit is separated from the boring machine and sits outside of a boring trench. The drill in this case, a model 200H, was powered by the hydraulics of a back hoe tractor.[3] Two control valves at the rear of the auger unit provide directional control for both the drill's auger drive and its cylinder thrust. The "auger motor control valve"[4] turns the auger inside the casing in either a clockwise or counterclockwise direction, while the "thrust control valve"[5] moves the auger shaft along the casing in either a forward or reverse direction.

A horizontal earth auger drill is operated in a leveled trench cut alongside an existing aboveground structure under which a hole must be bored. As the drill bores into the earth, the auger moves dirt or the spoils back through the casing along the auger shaft to the rear of the auger unit. The spoils are ejected from the machine by paddles through an expulsion or ejection chute,[6] which is covered by a hinged door.

On November 19, 1980, Shushereba was using the model 200H Horizontal Earth Auger Drill to drill a hole under a highway where telephone cables were to be installed. On the day of the accident it was cold and damp; it had recently rained. The drill sat in a three feet deep pit. Water had settled in the trench and its embankments were muddy. After operating the machine for some time, Shushereba exited the pit and crossed the highway to inspect the progress of the auger.

Before Shushereba exited the trench, he placed the auger drill's control levers in a neutral position, but left the remote power supply running; hydraulic fluid was being pumped to the drill from the back hoe tractor through attached hydraulic hoses. The hinged door to the ejection chute was also left open. According to the Shushereba's testimony, when he returned to reenter the trench he lost his footing on moist soil and slipped into the trench. Shushereba's foot lodged in the ejection chute and his arm simultaneously struck the auger control lever which activated the drill. Shushereba's left foot was crushed by the machine's rotating discharge paddles and this product liability suit resulted.

At trial, Shushereba claimed that his injuries were caused by design defects in the defendant's model 200H Horizontal Earth Auger Drill and advanced four basis of recovery under Pennsylvania's product liability law. Shushereba alleged that the defendant's machine was defective because: it could not effectively auger through various soil consistencies as advertised; there were no locking devices on the hydraulic control levers to prevent accidental operation; there was no housing or guard around the hydraulic control levers

1. *See* Illustration A, at Appendix to Opinion I.

2. *See* Illustration B, at Appendix to Opinion I.

3. *See* Illustration B, at Appendix to Opinion I.

4. *See* Illustration C, at Appendix to Opinion I.

5. *See* Illustration D, at Appendix to Opinion I.

6. *See* Illustration E, at Appendix to Opinion I.

to prevent accidental activation; and there were no permanent warning and instruction plates attached to the machine. The case was submitted to the jury under the four theories alleged by the plaintiff through special interrogatories. The jury returned a verdict for the defendant and the plaintiff's motion for a new trial followed.

Shushereba now advances several grounds for setting aside the jury's verdict. First, Shushereba claims that the jury erred in its fact-finding function and abused its discretion by reaching a hasty verdict for the defendant. Second, Shushereba asserts that the jury's answers to the special interrogatories were against the weight of the evidence and that the jury was confused and misled by the special interrogatories. Shushereba also contends that improper remarks made by a defense witness and voluminous surveillance films shown during the trial unfairly prejudiced the jury against his case. Finally, Shushereba argues that the jury's verdict was against the Court's final instructions on the law. The defendant vigorously opposes the plaintiff's motion.

## II. STANDARD OF REVIEW.

The plaintiff seeks a new trial pursuant to Federal Rule of Civil Procedure 59. Under Rule 59(a) "[a] new trial may be granted to all or any of the parties on all or part of the issues ... in an action in which there has been a trial by jury...." Fed.R.Civ.P. 59(a). Although the advisory committee thought it impracticable to enumerate all grounds for a new trial in Rule 59(a), the Supreme Court has held that a motion for a new trial may be bottomed on a claim "that the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *See Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940).

The propriety of granting a motion for a new trial is a matter lodged within the sound discretion of the trial court. Under Rule 59, the trial court is given broad discretion to prevent a perceived miscarriage of justice. *Kerry Coal Co. v. UMW,* 488 F.Supp. 1080, 1095 (W.D.Pa.1980), *aff'd,* 637 F.2d 957 (3d Cir.), *cert. denied,* 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981). Without benefit of fixed or rigid formulas, the trial court, with an eye toward avoiding substantial injustice, must determine whether the jury's verdict is unsupportable by, or against, the weight of the evidence or whether the jury was unduly influenced by partiality or prejudice.

■ A new trial is unwarranted unless the moving party clearly demonstrates that prejudicial error has been committed or that substantial justice was not achieved. *See* 6A J. Moore, *Moore's Federal Practice* ¶ 59.05[5] (2d ed. 1983). Nor may a new trial be granted because the evidence was sharply in conflict, because the jury could have drawn different inferences or conclusions, or because another result is more reasonable. *See Fireman's Fund Insurance Co. v. Aalco Wrecking Co.,* 466 F.2d 179, 186 (8th Cir.1972), *cert denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). Substantial justice, not reasonableness, is the test for whether a jury's verdict should be set aside.

■ In determining whether a new trial is necessary to achieve substantial justice, a trial court may not weigh the evidence, assay the credibility of the witnesses and then substitute its judgment for that of the jury. Such a de novo review would undermine the jury's fact-finding function and erode the parties Seventh Amendment and common law right to a trial by its peers. The Court's sole responsibility is to review the record to assure that there has been no miscarriage of justice; thus, a plausible jury verdict cannot be set aside. "If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed," only then is a new trial justified. 11 Wright & Miller,

*Federal Practice & Procedure*, Civil § 2806, at 49 (1973).

## III.  DISCUSSION.

### a.  Jury Misconduct: Error and Abuse of Discretion Through Hasty Deliberation.

Shushereba contends that the jury abused its function by deliberating for only one hour on eight days of testimony, eighteen exhibits, and having to consider five special interrogatories before reaching its verdict. Shushereba assails the jury's hastily reached verdict as the result of mistake, passion, prejudice or improper motive. This position is without support.

It is universally recognized that, to stand, a verdict must be the decision of a properly constituted jury acting fairly, impartially and in accordance with the law. *See* 6A J. Moore, *Moore's Federal Practice*, ¶ 59.08[4] (2d ed. 1983). It is equally well established, however, that the brevity with which a jury reaches its decision does not, standing alone, support a claim for capriciousness or abuse; something more is required. *See Paoletto v. Beech Aircraft Corp.*, 464 F.2d 976, 983 (3d Cir.1972).

The trial of this case, which involved lay and expert testimony, was neither unduly prolonged or complicated. Although the trial extended over an eight day period,— from the jury selection to return of the verdict—it cannot be fairly argued that the jury considered eight days of testimony. During the course of the trial, in addition to other necessary interruptions, the Court considered a lengthy *in camera* hearing on the admissibility of motion picture films.

More importantly, Shushereba's claim of jury misconduct amounts to pure speculation and conjecture. Shushereba has not shown, nor could he have demonstrated by competent proof on the record in this case, that the brevity of the jury's verdict was a dereliction of its sworn duty. A jury's verdict cannot be upset by speculation.

### b.  Jury Misconduct: Verdict Against the Weight of the Evidence

Shushereba also contends that the jury's verdict, on the question of whether the defendant's machine was defectively designed, was against the weight of the evidence. As previously noted, four theories of design defect were submitted to the jury through special interrogatories. The jury found no defect. Shushereba now argues that he proved by a "preponderance of the evidence" that the auger drill was defectively designed. This argument is misplaced.

To have a jury's verdict set aside, the moving party must affirmatively demonstrate that manifest injustice would result if the jury's verdict was allowed to stand. *See Larsen v. IBM Corp.*, 87 F.R.D. 602, 606 (E.D.Pa.1980). Only where the jury's verdict is unsupported by the facts or manifestly and palpably against the evidence, is a new trial necessary. *See Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529 (5th Cir.1974). A sufficient showing of manifest injustice has not been made in this case.

After a thorough review of the record, considering the overall setting of the trial, the character of the evidence, and the nature of the legal principles involved, this Court can find no justifiable reason, nor has one been cited, to set aside the jury's verdict as against the weight of the evidence.

The jury considered testimony from both parties on the auger drill's function and method of operation. Shushereba's theories of design defects, which were supported by expert testimony, were met by opposing expert testimony that the auger drill was not defective. A new trial cannot be granted merely because the evidence is sharply in conflict. *See Lewin v. Metropolitan Life Insurance Co.*, 394 F.2d 608, 615 (3d Cir.1968). Nor is the trial court permitted to weigh conflicting evidence or judge the credibility of witnesses and set aside the jury's finding simply because it may disagree with their conclusions. *See*

*Stancill v. McKenzie Tank Lines, Inc.,* 497 F.2d 529 (5th Cir.1974).

Here, Shushereba has not shown that some undesirable or pernicious element was introduced into the trial or that there was a complete lack of probative facts to support the jury's verdict. Absent a showing that the jury has reached a seriously erroneous result which would render its verdict, if allowed to stand, a miscarriage of justice, the plaintiff is not entitled to a new trial.

### c. Jury Misconduct: Verdict Against the Charge of the Court.

██ Shushereba further contends that the verdict was against the charge of the Court. Failure by the jury to follow the court's instructions, which results in prejudice to the moving party, is a proper ground for a new trial. *See Anderson v. Breazeale,* 507 F.2d 929 (5th Cir.1975).

██ Shushereba, however, cites no factual support for his claim that the jury ignored the court's instructions. Moreover, Shushereba's motion on this point, lacks the specificity required by Federal Rule of Civil Procedure 7(b)(1), and his brief in support thereof contains only vague and indefinite conclusions. Shushereba's naked allegation that the jury did not follow the court's instructions on the law amounts to no more than speculation. It has been long recognized that a mere suspicion that the jury did not follow the court's instructions is an insufficient basis for a new trial. *See Bickart v. Union Barge Line Corp.,* 75 F.Supp. 572 (W.D.Pa. 1947), *aff'd,* 165 F.2d 959 (3d Cir.1948).

### d. Procedural Bar to Trial Court's Review of Assigned Errors.

In the plaintiff's motion for a new trial, which was timely filed, he advanced several grounds to set aside the jury's verdict. In his brief, and subsequently at oral argument, the plaintiff enlarged his motion, adding three new grounds for a new trial. Shushereba belatedly assails the soundness of the special interrogatories submitted to the jury and also argues, that improper remarks by a defense witness and voluminous surveillance film shown during the defendant's case, unfairly prejudiced the jury against the plaintiff. The defendant, on the other hand, contends that trial court is without authority to grant a new trial on the grounds raised for the first time in the plaintiff's brief, but which were not specified in the plaintiff's motion, because those reasons were assigned beyond the mandatory time period for filing a motion for a new trial.

Under the federal rules of civil procedure a motion not made in open court "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought...." Fed. R.Civ.P. 7(b)(1). Rule 59(b) requires that "[a] motion for a new trial be served not later than 10 days after entry of judgment" and Rule 6(b) provides that this period may not be enlarged by the court. *See* Fed.R. Civ.P. 59(b) and 6(b).

Courts are not uniformly in agreement as to whether these rules permit consideration of belatedly assigned grounds for a new trial. Most of the authority prior to the 1966 amendments to the Federal Rules of Civil Procedure narrowly read Rule 59(b) to hold that a trial court has no authority to grant a new trial based upon grounds not stated in the moving party's motion. *See e.g., Massaro v. United States Lines Co.,* 307 F.2d 299, 303 (3d Cir.1962); *Russell v. Monongahela Railway Co.,* 262 F.2d 349, 354 (3d Cir.1958). *See also* cases cited at 6A J. Moore, *Moore's Federal Practice* ¶ 59.04 n. 4 (2d ed. 1983). After the amendment, the Third Circuit continued to hold that Rule 59(b) limited the district court's consideration to only those grounds assigned in the motion within the rule's mandatory ten day time period. *See Arkwright Mutual Ins. Co. v. Philadelphia Electric Co.,* 427 F.2d 1273, 1276 (3d Cir. 1970). *See also Kerry Coal Co. v. UMW,* 488 F.Supp. 1080, 1096 (W.D.Pa.1980), *aff'd,* 637 F.2d 957 (3d Cir.1981).

██ Under the Third Circuit's interpretation of Rule 59(b), this Court cannot properly consider the newly assigned grounds

for a new trial raised in Shushereba's brief after the elapse of the ten day mandatory filing period. Notably, Shushereba cannot demonstrate that he was unfairly prejudiced by the operation of Rule 59(b), since this is not a case where the movant could not state the grounds for relief in his motion because the evidence was not yet available to him. Nor is this a case where the belatedly raised grounds for a new trial required perusal of an untranscribed record. *See Pogue v. International Industries, Inc.*, 524 F.2d 342 (6th Cir.1975).

Furthermore, the movant has cited no extraordinary circumstance which would permit consideration of the assigned errors under Rule 60(b). For the sake of judicial economy, however, the merits of the plaintiff's untimely assigned grounds for a new trial are discussed below. As demonstrated below, were these arguments timely raised, the plaintiff's motion for a new trial would fail nonetheless for want of merit.

### i. Judicial Error: Special Interrogatories Confusing and Misleading.

Shushereba alleges that the jury was confused and misled by the special interrogatories, because interrogatory numbers 2, 3, 4, and 5 were drafted as being mutually exclusive. Interrogatory numbers 2, 3, 4, and 5 each set out one of Shushereba's four theories of product liability. Shushereba contends that the interrogatories were drafted to require the jury to find, if at all, that the earth auger drill was defective under all theories advanced by the plaintiff in the aggregate, but could not find that the machine was defective under one or any combination of the plaintiff's theories of defective design.

First, there is no merit to Shushereba's claim that the special interrogatories are mutually exclusive. For the jury to find that the earth auger drill was defective as a result of one or any combination of design defects, the jury needed only answer "yes" to one or more interrogatories. The jury, however, answered "no" to interrogatory numbers 2, 3, 4, and 5, indicating that

the earth auger drill was free from defect under all the theories advanced by the plaintiff. Moreover, the instructions following special interrogatory 5, which required the jury to "answer question 6 only if [its] answer to any *one or more* of the questions 2, 3, 4, or 5 was yes," makes it abundantly clear that the interrogatories were not mutually exclusive.[7]

Also, it should be noted, prior to the closing arguments and the final charge to the jury, the Court supplied the parties with a copy of the special interrogatories. The parties were given ample opportunity to review the special interrogatories and to interpose their objections before the jury retired to consider its verdict. No timely or proper objections were made.

Generally, courts are not inclined to favorably view a motion for a new trial where the complaining party made no effort at trial to call the alleged error to the court's attention or to make an appropriate objection and state distinctly that matter to which he objects and the grounds for his objection. *See, e.g. Frankel v. Burke's Excavating, Inc.*, 269 F.Supp. 1007, 1012–13 (E.D.Pa.1967), *aff'd*, 397 F.2d 167 (3d Cir.1968); *Chuy v. Philadelphia Eagles Football Club*, 431 F.Supp. 254 (E.D.Pa. 1977), *aff'd*, 595 F.2d 1265 (3d Cir.1979). *See also* Fed.R.Civ.P. 51.

### ii. Judicial Error: Misconduct of Witness

In response to questions on cross examination, Verle Rice, the President of R.B. Industries, stated that "God is the head man" at the company. Shushereba argues that Rice's response was calculated to influence the jury in favor of the defendant's case.

Here again, trial counsel made no timely objection, made no motion to strike, nor requested a cautionary instruction to be given to the jury to disregard the statement. More importantly, Shushereba can demonstrate no actual prejudice resulting

---

**7.** *See* Appendix to Opinion II.

from Rice's inappropriate remark. On this point, Shushereba makes an incredible argument. Shushereba argues that the jury "found for the defendant on religious grounds because the actions of the corporation were controlled by God." Opining in his brief that "[n]o jury is going to find against God," Shushereba makes a quantum leap in his analysis from Rice's statement to a verdict bottomed in religion. To assume that the jury disregarded the entire testimony and the Court's instructions on the law, solely on the basis of an unsuitable remark by one witness, evinces a lack of confidence in the judicial process and the collective intelligence of the jury; a proposition this court does not accept in light of common sense and vast experience to the contrary.

### iii. Judicial Error: Surveillance Films Unduly Prejudicial

Lastly, Shushereba contends that motion picture films depicting Shushereba's work activities since the accident were of no probative value and unfairly prejudice the jury by their cumulative and redundant effect.

As part of his case in chief, Shushereba testified that he sustained permanent injury to his left leg and foot as a result of the accident which would not permit him to return to work. Shushereba also testified that he had not worked since the accident. On cross-examination, defense counsel questioned Shushereba about specific work activities he had done since his accident. To each specific instance, Shushereba answered that he had not performed that work activity and emphatically denied that he had done any work since his accident.

During the defendant's direct case, motion picture films were shown to the jury which showed Shushereba performing the precise work activity he had specifically denied doing in his testimony. Contrary to Shushereba's emphatic denials, the motion picture films unquestionably captured him, not only performing a sundry of chores inconsistent with the scope of his alleged injuries, but in stark contrast to his prior testimony.

Shushereba now contends that showing the motion picture films was reversible error. Under the totality of the circumstances, this Court believes that the films were relevant to refute Shushereba's claim that he could not return to work and to test his veracity as a witness. Rules governing the admissibility of evidence provides that all "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant and therefore admissible. See Fed.R. Evid. 401 and 402. The rules also provide that evidence, although relevant, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed.R.Evid. 403.

The rules of evidence generally favor the admissibility of evidence which is logically probative of a material fact. See *Papizzo v. O. Robertson Transport, Ltd.*, 401 F.Supp. 540, 542 (E.D.Mich.1975). To exclude otherwise relevant evidence under Rule 403, the court must balance the probative value of the evidence against the dangers of unfair prejudice. The balancing of evidence is a function committed to sound discretion of the trial court.

The motion picture films in this case served a two-fold purpose. First, the films were relevant to refute Shushereba's claim that the continuing pain from his accident is so severe and sharp that he cannot return to work. Although Shushereba's medical doctors substantiated his claim, their conclusions were based partly on Shushereba's subjective symptoms. Under these circumstances, motion picture film depicting Shushereba's work activity since his accident may have been the only probative evidence available to the defendant to refute Shushereba's claim that he could not return to work. In personal injury cases, Pennsylvania courts have long admitted motion picture films as evidence to demon-

strate that the plaintiff has acted in a way inconsistent with his alleged injuries. *See, e.g., DeBattiste v. Anthony Laudadio & Son,* 167 Pa.Super. 38, 74 A.2d 784, 786 (1950).

Second, it cannot be ignored that Shushereba specifically denied performing each activity illustrated in the films. Clearly, the motion picture films were relevant to call Shushereba's truthfulness into question. Rule 607 provides that the credibility of a witness may be attacked by any party. *See* Fed.R.Evid. 607. To challenge the veracity of a witness by motion picture film, by other evidence or through other means adduced for the express purpose of proving that a witness is unworthy of belief, is a proper method of impeachment.

In sum, this Court, having weighed the probative value of the motion picture films against its prejudicial effect, can find no justifiable reason to set aside the jury's verdict. Here the motion picture film evidence was highly probative of a material fact. The evidence refuting Shushereba's claimed inability to work was simple and impressive, without being sensational or shocking. Under the circumstances, the motion picture films were the most pedestrian evidence available to refute Shushereba's claim.

This court also does not believe that the evidence was unduly cumulative, redundant or that it unnecessarily prolonged the trial. This conclusion is particularly appropriate here because the plaintiff was aware, well in advance of trial, of the existence and contents of the films, and yet denied that he had performed the activities shown therein. At this juncture, it is highly inappropriate for the plaintiff to seek a new trial to remedy the result of his own undoing.

For the foregoing reasons, Shushereba's motion to set aside the jury's verdict is denied. An appropriate order follows.

APPENDIX TO OPINION I

Horizontal Earth Auger Drill

# Model 200H Boring Unit

## Casing Push or Free Bore

- CAN USE BACK HOE FOR POWER OR ANY HYDRAULIC POWER SOURCE

- ALL HYDRAULIC

- SATISFIES OSHA REGULATIONS

Your Hydraulic Power Source

APPENDIX TO OPINION II.

SPECIAL INTERROGATORIES

1. Was the horizontal earth auger drill manufactured or sold by the Defendant R.B. Industries to H.J. Lauris Co.?

YES _X_ NO ___

    YOU ARE DIRECTED TO ANSWER QUESTION 1 "YES"

ANSWER QUESTION 2

2. Was the horizontal earth auger drill as sold to H.J. Lauris Co. defectively manufactured in that it was unable to drill through various soil consistencies, such as mud and clay, without clogging?

YES ___ NO _X_

ANSWER QUESTION 3

3. Was the horizontal earth auger drill as sold to H.J. Lauris Co. defectively manufactured because there were no locking devices on its two hydraulic fluid controls?

YES ___ NO _X_

ANSWER QUESTION 4

4. Was the horizontal earth auger drill as sold to H.J. Lauris Co. defectively manufactured because there was no housing around the controls and/or no gear control guides to prevent accidental activation of the machine?

YES ___ NO _X_

ANSWER QUESTION 5

5. Was the horizontal earth auger drill as sold to H.J. Lauris Co. defective because there were no permanent warning and/or instruction plates attached to it?

YES ___ NO _X_

GO TO QUESTION 6.

    ANSWER QUESTION 6 ONLY IF YOUR ANSWER TO ANY *ONE OR MORE* OF THE QUESTIONS 2, 3, 4 or 5 was "YES." IF YOU ANSWERED "NO" TO *ALL* OF THE QUESTIONS 2, 3, 4 and 5, PLAINTIFF IS NOT ENTITLED TO RECOVER DAMAGES, AND YOU WOULD PROCEED NO FURTHER BUT SIGN AND DATE THESE SPECIAL INTERROGATORIES IN THE SPACE PROVIDED.

6. Was the defective condition and/or defective conditions in the horizontal earth auger drill a substantial factor in bringing about the injuries to Plaintiff George Shushereba on November 19, 1980?

YES ___ NO ___

    IF YOUR ANSWER TO QUESTION 6 IS "NO", PLAINTIFF IS NOT ENTITLED TO RECOVER DAMAGES. PROCEED NO FURTHER AND SIGN AND DATE THESE SPECIAL INTERROGATORIES IN THE SPACE PROVIDED.
    IF YOUR ANSWER TO QUESTION 6 IS "YES". ANSWER QUESTIONS 7A, 7B and 7C AS DIRECTED.

7A. Did the Plaintiff, George Shushereba, actually know, of his own knowledge, the specific defect and/or defects in the horizontal earth auger drill which eventually caused his injury?

YES ___ NO ___

YOU ARE DIRECTED TO ANSWER QUESTION 7A "NO".

7B. Did the Plaintiff, George Shushereba, recognize and appreciate the danger of the specific defect or defects in the horizontal earth auger drill which eventually caused his injury?

YES ___ NO ___

YOU ARE DIRECTED TO ANSWER QUESTION 7B "NO".

7C. Did the Plaintiff, George Shushereba, voluntarily choose to encounter the danger caused by the specific defect and/or defects?

YES ___ NO ___

YOU ARE DIRECTED TO ANSWER QUESTION 7C "NO".

PROCEED TO ANSWER SPECIAL INTERROGATORY 8 IN THE SPACE PROVIDED.

8. We award damages in the amount of $_____ (insert amount) as fair and adequate compensation for all physical and financial injury sustained by the Plaintiff, George Shushereba, as a result of the accident.

DATE: February 15, 1984

SIGNED:  1. _____ /s/ _____
                    (Foreperson)
         2. _____ /s/ _____
         3. _____ /s/ _____
         4. _____ /s/ _____
         5. _____ /s/ _____
         6. _____ /s/ _____